# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | Case No. 20-30208 |
| CALVIN RAY KENNEDY ) | Chapter 11 |
| CYNTHIA M. KENNEDY ) | |
| ) | |
| Debtors. | |

## OBJECTION AND RESPONSE OF DEBTORS TO APPLICATION OF WILMINGTON SAVINGS FUND SOCIETY FOR ATTORNEY'S FEES AND EXPENSES [DOC. 133] IN THE AMOUNT OF $72,807.85; REQUEST FOR CONTINUANCE OF HEARING TO CONDUCT DISCOVERY

The Debtors object to the Application of Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust ("Wilmington"), not in its individual capacity but solely as Owner Trustee of Residential Credit Opportunities Trust, II ("RCOT") for Attorney's Fees and Expenses (the "Application") in the amount of $72,807.85. In the circumstances of this case, the fees and expenses requested are egregious and represent time which was not reasonably necessary to protect the interest of the secured party.

The hearing on the Application is currently set for March 29, 2022. Counsel for the Debtors will be out of town from March 16, 2022 through March 27, 2022, and does not have sufficient time to do the necessary discovery in this contested matter or to prepare for the hearing. The Debtors request at least a ninety-day continuance of the hearing.

In partial support of their objection (to be amended subsequent to discovery), the Debtors show the court that:

1. Upon information and belief, PHH Mortgage Corporation ("PHH") at all times relevant hereto has acted as the servicing agent for Wilmington and/or RCOT, one of which is ostensibly the owner of the debt.

2. As of the filing date of the Chapter 11 petition, the Debtors' payments on the debt were current.

3. Subsequent to the Chapter 11 filing, due to the Covid epidemic, the Debtors missed, upon information and belief, two monthly payments. These missed payments were paid by the Debtors several months later. The loan was current during most of this proceeding.

4. The Debtors own multiple parcels of real property, including i) their residence, ii) a lot adjoining their residence, iii) a vacant lot in Iredell County; iv) two separate parcels of real property which are leased to the Ramsey-Peele Corporation ("Ramsey-Peele") and used in its day care center operations.

5. The Debtors have always kept current on the payment of ad valorem taxes owed on the collateral or Wilmington and/or RCOT.

6. The Debtors have always kept the collateral of Wilmington and/or RCOT adequately insured.

7. The Debtors are already paying contractual 7.75% interest to Wilmington and/or RCOT on the loan, and during this proceeding PHH, Wilmington and/or RCOT sought to add an additional 4.0% default rate, for an aggregate interest rate of 11.75%.

8. At all times relevant hereto, Wilmington, PHH and/or RCOT knew or should have known that the source of payments on the indebtedness was the day care operations of Ramsey-Peele Corp., a corporation wholly owned by the Debtors. Nevertheless, Wilmington, PHH and/or RCOT determined that it was necessary to enjoin the use of rent to pay the debt. And to have multiple continuances of the hearing on such relief, and obtain multiple redundant orders, during the course of this proceeding.

9. Upon information and belief, Wilmington, PHH and/or RCOT have at all relevant times been aware that its collateral had been appraised for the aggregate amount of $5,405,000.00 in 2016 and 2017...more than $1.4 million more than the debt. Wilmington, PHH and/or RCOT are and have been substantially oversecured.

10. Despite the fact that the Debtors own multiple parcels of real property, and that such property has mixed uses (two parcels for business, two parcels personal residential, and one parcel investment), Wilmington, PHH and/or RCOT asked this court to determine that this was a single asset real estate case. These same parties also filed a Motion for Relief from stay which was abandoned and not pursued.

11. The Debtors attempted to negotiate plan treatment of the Wilmington and/or RCOT debt very early in this case, but all reasonable offers were rebuffed. Wilmington and/or RCOT determined that the Debtors should sell the commercial properties, discontinue daycare operations, and displace hundreds of children during the pandemic.

12. PHH, Wilmington and/or RCOT determined for unknown reasons that the guarantor of the loan, Ramsey Peele, should be sued in state court. A lawsuit was filed in November, 2020 and a significant amount of the requested fees were incurred in this useless action. PHH, Wilmington and/or RCOT were aware of the financial condition of Ramsey-Peele because of the periodic reports which were filed with this court. Ramsey Peele did not have assets justifying the expense of the state court action.

13. The costs associated with this state court action were not reasonable and the action served no purpose whatsoever...except to increase the claim for attorney's fees and expenses. The fees and expenses related to the state court lawsuit are not broken out from other fees, and it will take significant time to do so.

14. PHH, Wilmington and/or RCOT appear to be attempting to charge the Debtors for legal fees related to mistakes made by PHH, Wilmington and/or RCOT. These include the improper use of funds in escrow.

15. In their confirmed plan, the Debtors consented to the payment of $20,000.00 to Wilmington Savings on account of an alleged claim for default interest. Default interest is intended to compensate a lender for the additional cost result from a borrower's default. Charging the Debtors legal fees and default interest is essentially charging the Debtors twice for the same thing.

16. The Debtor's plans were simple. PHH, Wilmington and/or RCOT failed to exercise restraint in the fees and expenses incurred in connection with this matter. PHH, Wilmington and/or RCOT exhibited excessive caution, overzealous advocacy and hyperactive legal efforts.

17. The burden of proof as to the allowance of attorney's fees and expenses is on PHH, Wilmington and/or RCOT. The Application does not analyze all of the relevant factors and does not meet the burden of proof.

18. The Debtors need time to conduct discovery. Such discovery will allow the Debtors to more clearly demonstrate to the court that the requested fees and expenses are wholly unreasonable, for reasons including but not limited to: i) the value of Wilmington Savings' collateral has greatly exceeded the debt owed, and as such Wilmington Savings has been more than adequately protected throughout this proceeding; and ii) the majority of the legal services were not necessary to protect the client's interest.

19. The Debtors also intends to conduct discovery to obtain copies of any agreements and correspondence between Wilmington, PHH, RCOT or any other party driving the decision-making process in this case. The Debtors believe that the evidence will show that PHH employees and others were making litigation decisions based on what they believed was necessary to protect PHH interests…as opposed to Wilmington's interests… under the servicing agreement or agreements.

20. The ultimate result of the case was maintaining the status quo, moving forward under the pre-petition agreements. The legal fees and expenses being requested ultimately accomplished little if anything.

WHEREFORE, the Debtors request that the hearing on this matter be continued, and that ultimately the relief sought in the Application be denied.

Dated: March 19, 2022.

**THE HENDERSON LAW FIRM**

 /s/James H. Henderson
James H. Henderson
State Bar No. 13536
2030 South Tryon St., Ste. 3H
Charlotte NC 28203
Telephone:    704.333.3444
Facsimile:    704.333.5003
Email:    henderson@title11.com