UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | Case No. 20-30208 |
| CALVIN RAY KENNEDY ) | Chapter 11 |
| CYNTHIA M. KENNEDY ) | |
| ) | |
| Debtors. | |

**REPLY OF DEBTORS TO RESPONSES AND OBJECTIONS BY PHH MORTGAGE SERVICES AND WILMINGTON SAVINGS FUND SOCIETY TO DEBTORS' INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS AND MOTIONS FOR PROTECTIVE ORDERS [DOC. NOS. 145 AND 146]**

The Debtors file this reply to the Responses and Objections by PHH Mortgage Services and Wilmington Savings Fund Society to Debtors' Interrogatories and Requests for Production of Documents and Motions for Protective Orders. PHH Mortgage Services ("PHH") upon information and belief is the servicer of the loan owned by Wilmington Savings Fund Society ("Wilmington"). The Hutchens Law Firm, LLP ("Hutchens") appears in this matter for both PHH and Wilmington.

**SUMMARY**

***The $75,000.00 (approximate) requested in Wilmington's Application for Attorneys' Fees and Expenses [Doc. No. 133] (the "Application") are not reasonable under the circumstances of this case.*** The Amount owed to Wilmington by the Debtors as of the February 19, 2020 filing date was $2,927,332.40. The Debtors were current on payments to Wilmington as of the bankruptcy filing date. Debtors missed, upon information and belief, two monthly payments early during the Covid pandemic, but the Debtors were able to catch up these payments and cure the payment default in 2020.

Wilmington's claim is secured by first priority deeds of trust on two parcels of commercial real property located in Charlotte, N.C. For purposes of making the loan now owned by Wilmington, hese real properties were appraised in late 2016 and early 2017 as having an aggregate value of $5,810,000.00. Because of a downturn in the day care business (the upfit of the buildings was day care specific) the Debtors scheduled the aggregate value of Wilmington's collateral as being $3,496,000.00. Post-petition, the Debtors had the real properties appraised, and as of April 22, 2020 these appraisals showed that the aggregate value of Wilmington's collateral was $3,700,000.00. Using these values, Wilmington is over secured by a significant amount of equity…from $700,000.00 to $2,810,000.00.

The fees requested reflect that PHH and Wilmington employed overly aggressive strategies in this proceeding. Courts have broad discretion under the reasonableness standard to meet the purpose of §506(b) to prevent creditors from failing to exercise restraint in the fees and expenses incurred. Courts should look to see if the creditor is exhibiting excessive caution, overzealous advocacy, and hyperactive legal efforts. This requires an examination of the various factors set forth below.

Undersigned counsel understands that Wilmington may not have any employees. This would

seem to be true, because the Responses seek to protect communications between Hutchens and employees of PHH, but not communications between Hutchens and employees of Wilmington. If Wilmington has no employees, then PHH and its employees have made and are making all of the decisions concerning how the Wilmington claim has been handled in this case. Yet, in its Response PHH disingenuously states that it "...is not involved in this contested matter..." and is not subject to discovery requests as provided in Bankruptcy Rule 9014. PHH is certainly involved as at a minimum an agent for Wilmington.

And, if PHH is making all of the decisions concerning how the Wilmington claim is "protected" in bankruptcy matters, PHH has no incentive to police its attorneys' activities and charges, since it could simply dump any and all charges billed onto the Debtors. PHH has a possible conflict of interests in that it may be incentivized by its servicing agreement with Wilmington to protect the interests of PHH, and its actions may not have been reasonable and necessary to protect the interests of Wilmington. "[A]n indemnity agreement is not a blank check; it does not entitle the surety to reimbursement for legal fees which are unreasonable or unnecessary." *Jackson v. Hollowell*, 685 F.2d 961, 966 (5th Cir. 1982).

A.   **Standards for Approval of Attorney's Fees and Expenses**

The Court should consider the Responses of PHH and Wilmington in light of the fact that the burden of proof in this matter is on Wilmington. **The Application contains no analysis whatsoever of the relevant factors considered by courts in determining the reasonableness of attorneys' fees and expenses**. The Application baldly asserts in Paragraph 12 that "...the fees and expenses incurred and requested herein were necessary and reasonable for Wilmington Savings to protect its rights and interests in the Real Property". And now PHH and Wilmington seek to hide documents that would allow the Debtors to properly address the relevant factors. Because the Debtors' Chapter 11 Plan could not have removed Wilmington's deeds of trust from the real properties, there was actually very little that needed to be done to protect Wilmington's property interests.

In determining the reasonableness of attorney's fees, this Court should follow the analysis used in *Pellegrin v. Nat'l Union Fire Ins. Co. of Pittsburgh (In re Abrams & Abrams, P.A.),* 605 F.3d 238, 244 (4th Cir. 2010), primarily using the factors set out in N.C. GEN. STAT. § 6-21.6(c). This Court will also consider the factors in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974) and used pursuant to § 506(b).

These factors are broad and include:

a. The amount in controversy and the results obtained, and the extent to which the party seeking attorney's fees prevailed in the action;
b. Novelty and difficulty of the questions raised in the action;
c. The reasonableness of the time and labor expended, the billing rates charged by the attorneys, the skill required to perform properly the legal services rendered, and the amount of attorney's fees awarded in similar cases;

    d. Efforts at voluntary resolution and the relative economic positions of the parties, whether a party unjustly exercised superior economic bargaining power in the conduct of the action;

    e. The terms of the business contract; and

    f. The timing of settlement offers made.

The Responses of PHH and Wilmington show that they are not aware of the breadth of this Court's inquiry. Page 3 of Wilmington's Response states in part that the Debtor's simply "...can produce evidence that the times spent by counsel for Wilmington Savings was simply too much or, at least, what would be unreasonable under the circumstances". This is a gross oversimplification of the attorneys' fee approval process under 11 U.S.C. §506.

**B.**     **Attorney-Client Privilege**

    PHH and Wilmington seek to avoid discovery using these privileges. However, this strategy does not work in indemnification cases such as this. In *Ideal Electronic Security Co. v. International Fidelity Insurance*, 129 F.3d 143 (D.C. Cir. 1997), Ideal had agreed to indemnify International Fidelity ("IFIC") against any losses or expenses under a payment bond, including attorney's fees incurred to defend against claims arising under the bond. IFIC sought the recovery of attorney's fees incurred in connection with the claim of a subcontractor for underpayments. Because IFIC asserted that certain billing statements supporting the claim for fees were protected by attorney-client privilege, the District Court below reduced the award of fees for the amounts covered by the purportedly privileged materials. Ideal contended that it was entitled to review all billing statements so that it would be in a position to show that IFIC's arrangements with counsel were both unnecessary and unreasonable.

The *Ideal* Court on appeal determined that

> **Appellants are entitled to full discovery of information underlying the claim for fees; only after obtaining such discovery will the appellants be in a position to assess the reasonableness of IFIC's position and then present to the court any legitimate challenges to the surety 's claim...Appellee effectively waived its attorney-client privilege with regard to all communications going to the reasonableness of the fees claimed when it placed the purportedly privileged matters in dispute by claiming indemnification for the attorney's fees.**

*Id.* at 146.

    The Debtors herein are entitled to discover the information requested to appraise the reasonableness of the amount of fees requested by PHH/Wilmington, including the nature and extent of the work done by IFIC's counsel on various phases of the case, so that it may present to the Court any legitimate challenges to Wilmington's claim. *See National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1329 ( D.C. Cir. 1982 ). Wilmington and PHH are attempting to elude discovery under a claim of attorney-client privilege: however, where the assertion of a privilege results in the withholding of information necessary to the Debtors' defense to Wilmington's claims, the privilege must give way to the Debtor's right to mount a defense. Under the common-law

doctrine of implied waiver, the attorney-client privilege is waived when the client places otherwise privileged matters in controversy. *See* 6 James W. Moore, et al., MOORE'S FEDERAL PRACTICE Section(s) 26.49[ 5] (3d ed. 1997). The court in *In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982) explained the rationale underlying the implied waiver doctrine:

> **Implied waiver deals with an abuse of a privilege. Where society has subordinated its interest in the search for truth in favor of allowing certain information to remain confidential, it need not allow that confidentiality to be used as a tool for manipulation of the truth-seeking process. [A party asserting attorney-client privilege] cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. Id. at 807 (quotation omitted).**

By claiming a right for the indemnification of attorney's fees from Ideal and offering the billing statements as evidence of the same, IFIC waived its attorney-client privilege with respect to... any other communications going to the reasonableness of the amount of the fee award. *See In re Sealed Case* 877 F.2d 976,980-81 (D.C.Cir. 1989) ("[A] waiver of the privilege in an attorney-client communication extends to all other communications relating to the same subject matter.") (quotation omitted).

This is particularly true where, as here, PHH and Wilmington partially disclose allegedly privileged information in support of its claim against the Debtors, but then asserts the privilege as a basis for withholding from the Debtors the remainder of the information which is necessary to defend against the claim. *Accord United States v. Westem Elec. Co.*, 132 F.R.D. 1, 3 (D.D.C. 1990) (where client placed counsel's actions at issue, client was precluded from asserting work-product privilege as to any documents that undermined client's position while at the same time producing work-product that supported position); *Byers v. Burleson* , 100 F.R.D. 436, 440 (D.D.C. 1983) (attorney-client privilege impliedly waived where privileged information is necessary to resolve precise issue which party asserting privilege interjected into the case); *Wender v. United Services Auto. Ass'n*, 434 A.2d 1372, 13 74 (D.C. 1981) (by asserting its reliance on advice of counsel as a material element of its defense, party waived the attorney-client privilege with respect to all communications to or from counsel concerning the transaction).

In *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002), the plaintiff sought indemnification for costs, including attorneys' fees, incurred in the defense of a patent infringement action. The Court found that in instituting an action for indemnification seeking recovery for legal expenses, thereby putting the work of its attorneys directly at issue in the case. Application of the privilege under these circumstances would deny the defendant access to vital information peculiarly possessed by the attorneys necessary to defend against plaintiff's claims. In such circumstances, the *Pamida* court found, the plaintiff has waived the protection of the attorney-client privilege **and the work product privilege**.

C.  **Waiver of work product privilege in indemnification cases**

The protection "derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975). For example, the work-product privilege is "waived when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege." *United States v. W. Elec. Co.*, 132 F.R.D. 1, 3 (D.D.C. 1990). As a general matter, the work-product doctrine will not be recognized when doing so "is not

required to maintain a healthy adversary system." *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982). *See, e.g., Grand Elec.,LLC v. Int'l Bhd. of Elec. Workers Local 265*, No. 09-3160, 2011 WL 6740408, at 4 (D. Neb. Dec. 22, 2011) (finding that "neither the attorney-client privilege nor the work-product privilege may be invoked" by a party that "ma[de] a request for attorney's fees," because they "placed the[ir] billing statement[s] at issue"); *Liberty Mut. Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009) (finding, in a dispute over defense costs arising out of an insurance contract, that the "protections afforded by the work product doctrine are waived" because "a party put in issue an attorney's opinion or work product"); *Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 410 (N.D. Ill. 2001) ("Alpha has waived attorney work product protection with respect to the document categories listed in Abbott's request by placing the subject matter of the documents at issue in this subsequent indemnification suit."); *Charlotte Motor Speedway, Inc. v. Int'l Ins. Co.*, 125 F.R.D. 127, 131 (M.D.N.C. 1989) (recognizing a "narrow exception to Rule 26(b)(3)" in an indemnification suit between an insurer and an insured, for discovery requests in which "the information for which protection is sought is directly in issue")

**D.     Cases cited by Wilmington and PHH are not probative**

The cases cited in the Wilmington Response are not relevant to the facts and issues in this contested matter. *In re Impounded*, 241 F.3d 308 (3rd Cir. 1979) concerned whether the crime-fraud exception overrides the attorney-client privilege and whether there was a basis to quash a federal grand jury subpoena. *Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414 (3rd Cir. 1991) addressed the issue as to whether a party that discloses information protected by the attorney-client privilege in order to cooperate with a government agency that is investigating it waives the privilege only as against the government. *Willis v. Power Co.*, 291 N.C. 19 (1976) pertained to the discovery of documents in a wrongful death action against Duke Power Company. *Upjohn Co. v. United States*, 499 U.S. 383, 66 L.Ed. 2d 584, 101 S.Ct. 677 (1981) involved production of communications between corporate counsel and a company's employees in connection with an Internal Revenue Service investigation.

**E.     Proprietary or confidential documents**

PHH and Wilmington argue that certain documents are "proprietary" and thus not discoverable. However, neither PHH nor Wilmington provide any evidence beyond their unsupported statements that such documents are "proprietary" or "confidential". The Responses are not evidence that any requested documents are in fact "proprietary" or "confidential" and, if that proof was made, what rules or statutes allow PHH and Wilmington to ignore the Debtors' discovery requests.

**F.     Vehicle for Improper Purpose**

PHH and Wilmington state that the Debtors' discovery has some improper purpose. The Debtors deny this allegation. The purpose is to obtain sufficient information to support the Debtors' defenses to the claim for legal fees and expenses. The Debtors are entitled to review documents and correspondence to make support their defenses.

WHERFORE, the Debtors pray that the Court order PHH and Wilmington to respond to the discovery propounded, and that the Motions for Protective Orders be denied.

Dated: August 7, 2022

**THE HENDERSON LAW FIRM**

 /s/James H. Henderson
James H. Henderson
State Bar No. 13536
2030 South Tryon St., Ste. 3H
Charlotte NC 28203
Telephone:	704.333.3444
Facsimile:	704.333.5003
Email:	henderson@title11.com