IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

CALVIN RAY KENNEDY a/k/a
C. RAY KENNEDY and
CYNTHIA M. KENNEDY,

　　　　　　　　　　　　Debtors.

CASE NO.: 20-30208
CHAPTER 11

---

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR COMPENSATION

**NOW COMES**, Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely as Owner Trustee of Residential Credit Opportunities Trust II ("WS"), by and through counsel, hereby submits this Memorandum of Law in Support of Application for Compensation in support of its *Application for Compensation* (doc #133) and as directed by the Court's *Order Setting Hearing and Deadlines on Application for Compensation Filed by Creditor Wilmington Savings Trust Society, FSB D/B/A Christina Trust Not In Its Individual Capacity But Solely As Owner Trustee Of The Residential Credit Opportunities Trust II [doc #133] and Debtors Response and Objection Thereto [doc #135]* ("Order Setting Hearing" doc #163) and shows the Court:

### INTRODUCTION

WS seeks reasonable attorneys' fees in connection with the defense of its Application for Compensation in the above-captioned case. WS acted to defend its fees in this case based on multiple Objections filed by the Debtors to WS's reasonable fees (see doc #s 135 and 156).

1

WS is entitled to fees as the Supreme Court's decision in *Baker Botts L.L.P v. ASARCO LLC*, 576 U.S. 121, 135 S. Ct. 2158. (2015) upon which Debtors heavily rely, is limited to fees awarded under 11 U.S.C. §330(a)(1)[1].

## ARGUMENT

What *Baker Botts* does state clearly is "[e]ach litigant pays his own attorney's fees, win or lose, *unless a statute or contract provides otherwise.*" *Id.* at 126 (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S. Ct, 2149, 176 L. Ed. 2d 998 (2010) (emphasis supplied)). This is known as the American Rule.

Section 506(b) of the Code specifies as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Section 506(b) is a clear departure from the American Rule. In fact, the Court in *Baker Botts* relied on the American Rule in rendering the decision which allows "'reasonable compensation' only for 'actual, necessary services rendered." 576 U.S. 121, 128. Both the dissent and majority in *Baker Botts* focused their inquiry on this specific language of Section 330(a). Section 506(b) contains no such limitation constraining the reading of fees awarded to creditors. The lack of limiting language in Section 506(b) weighs in favor of granting WS's request for attorneys' fees in defending its fee application.

Moreover, the Promissory Note executed by the Debtors provides on page 1 in paragraph 3 that "[A]ll of the terms, covenants and conditions contained in the Loan Agreement, the Security Agreement and the other loan documents are hereby made a part of this Note to the same extent

---

[1] All statutory references hereinafter are to the United States Bankruptcy Code (the "Code") unless otherwise noted.

and with the same force as if they were fully set forth herein." The Loan and Security Agreement executed by the Debtors further provides in paragraph 4.02(g) titled Covenants on page 10 as follows: "In addition to the payments specified in this Loan Agreement, Borrower shall pay, on demand, all of Lender's out of pocket fees, costs, charges or expenses (including the reasonable fees and expenses of attorneys, …) incurred by Lender in connection with: (3) the administration or enforcement of, or preservation of rights or remedies under, this Loan Agreement or any other Loan Documents including, or in connection with, any litigation or appeals, any Foreclosure Event or other disposition of any collateral granted pursuant to the Loan Documents; and (4) any Bankruptcy Event…." Bankruptcy Event is also a defined term under Schedule 1 to the Loan and Security Agreement on page 37 and means "the commencement, filing or continuation of a voluntary case or proceeding under one or more of the Insolvency Laws by Borrower." Finally, the Guaranty in paragraph 3(c) provides that Guarantor or Ramsey-Peele Corporation agrees to pay "all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty."

N.C.G.S. § 6-21.2(2) provides that:

"If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness."

There is a both a contractual and statutory basis to recover the attorneys' fees and expenses incurred by WS from the Borrowers. Thus, the right to recover attorneys' fees for litigating the right to recover fees issue is covered by the terms of the loan documents which specifically allow the same.

There are only a few decisions regarding whether "fees on fees" are recoverable. As to collecting "fees on fees," the Court in *In re Nortel Networks, Inc.*, 2017 Bankr. LEXIS 674 (Bankr.

D. Del. 2017) agreed that Section 330 was limited to the facts of that case. In the *In re Nortel Networks, Inc.*, the Court found that a retention agreement was an agreement whereby one party agreed to pay the defense costs even if the estate was not the objecting party to those fees. Accordingly, the Court allowed the defending party fees to recover the attorneys' fees which were objected to by certain noteholders. Because of the existence of the written agreement and the provisions of the same, the Court in *Nortel Networks* rejected the idea that *Baker Botts* prohibited the recovery of the same.

Likewise, *In re Hungry Horse, LLC*, 574 B.R. 740 (Bankr. Dist. N.M. 2017), the Court further limited the holding in *Baker Botts*. The Court found that, since an agreement had been approved by the Court which terms and provisions provided for the recovery of fees should the fees be objected to, the *Baker Botts* decision did not prohibit the recovery of fees.

Another Court addressed the question but provided almost no analysis for its decision. (*see In re Tatum*, No. 15-31925-VFP, 2017 Bankr. LEXIS 1306 (Bankr. D.N.J. May 12, 2017). The court in *Tatum* simply concluded *Baker Botts* applied to attorney fees under Section 506(b) without any substantive analysis. *Tatum* at *17.

Other courts to analyze fee applications made pursuant to Section 506(b) concluded that the "key determinant is whether the creditor engaged in 'actions that similarly situated creditors might reasonably conclude should be taken.'" *In re Parker*, 2015 Bankr. LEXIS 2861, at *15 (Bankr. E.D.NC. 2015) (quoting *In re F.B.F. Indus., Inc.*, Case No. 91-24613DWS, 1995 Bankr. LEXIS 1645 (Bankr. E.D. Penn. 1995)). The fees requested "need not have been *actually* necessary; rather, the creditor simply must have *reasonably believed* they were necessary. *Parker* at *16 (emphasis in original). WS defended its fee application as the Debtors' initial objection to the fee application was unreasonably broad and lacking in specifics.

Because of various defaults by the Debtors both pre-petition for having a judgment lien filed against the properties that secure the Note (see paragraph 11.02(b) of the Loan and Security Agreement) and the Debtors defaulting in the post-petition mortgage payments for the period from June 1, 2020 through August 20, 2020, WS made demand against the Ramsey-Peele Corporation for payment of the Note and eventually filed suit against it in state court. Prior to filing suit, WS sent a notice of enforcement of attorneys' fees to Ramsey-Peele Corporation on August 14, 2020 giving this entity five days notice. Since the obligation was not paid, WS is technically entitled to recover 15% of the outstanding balance due from this entity which totals in excess of $440,000.00 in attorneys' fees. See *Baker & Taylor, Inc. v. Griffin*, 3:12-cv-00553-MOC (W.D.N.C. 2012) and *American First Federal, Inc. v. Zaria Properties, LLC*, 3:15-cv-00404-FDW-DSC (W.D.N.C. 2015), copies of which are attached.

## CONCLUSION

For the reasons set forth above, WS respectfully moves the Court to: (i) overrule the Debtors' Response and Objection to WS's Application for Compensation; (ii) grant WS's Application for Attorneys' Fees; and (iii) grant such other and further relief as the Court deems just and proper.

This the 6th day of February, 2023.

HUTCHENS LAW FIRM LLP
Attorneys for Wilmington Savings Fund Society, FSB, d/b/a
Christiana Trust, not in its individual capacity but solely as
Owner Trustee of Residential Credit Opportunities Trust II

By: _____
William Walt Pettit
N.C. Bar No. 9407
6230 Fairview Road, Suite 315
Charlotte, N.C. 28210
Telephone: (704) 362-9255
Email: walt.pettit@hutchenslawfirm.com

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cv-00553-MOC

| | | |
|---|---|---|
| **BAKER & TAYLOR, INC.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **DAVID GRIFFIN** | ) | |
| **CHARLES JONES** | ) | |
| **COLLEGE BOOK RENTAL COMPANY, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on plaintiff's Motion for Attorneys' Fees (#301). After an initial round of briefing, oral arguments were heard on plaintiff's motion on January 7, 2015, and an Order (#357) entered allowing plaintiff's motion, but holding in abeyance determination of amount of attorneys' fees. A second round of briefing was allowed on the amount of fees, focusing on the issue of whether the use of the phrase "which may be incurred" modified Defendant Griffin's obligation under state law, which provides for a flat attorneys' fee of 15 percent. Plaintiff and Defendant Griffin have both filed timely supplements, making the issue ripe for resolution.

At the hearing, the parties discussed whether the language contained in the guaranty modified the statutory obligation under Chapter 6-21.2(2) of the North Carolina General Statutes for a guarantor to pay and for this court to award a 15% attorney's fee. The language of the guaranty provided that the "[g]uarantor agrees to pay all costs, expenses, and fees, including

-1-

reasonable attorney's fees, which may be incurred by Baker & Taylor in enforcing this personal

guaranty..." (emphasis added).

In its supplemental pleading, plaintiff has pointed the court to two decisions in which

nearly identical language was used in the agreement and the court enforced the statutory

provision. See Trull v. Central Carolina Bank & Trust, 124 N.C.App. 486, 490 (1996) *affirmed

in part, review dismissed in part* 347 N.C. 262 (1997); Meineke Car Care Centers, Inc. v. RLB

Holdings, LLC, 3:08-cv-240, 2010 U.S. Dist. LEXIS 37184, at *7 (W.D.N.C. Mar. 18, 2010).

Both courts held that to invoke the statute's automatic application of a 15 percent attorneys' fee,

the underlying writing need only contain: (1) evidence of an indebtedness; and (2) a "provision

for 'reasonable attorneys' fees.'"   As in this case, both writings also contained the phrase

"actually incurred."

In Trull, the North Carolina Court of Appeals addressed an argument by the debtor that

the creditor should be limited to fees "actually incurred," as follows:

> Plaintiff additionally argues that an award of attorneys' fees to CCB under
> these circumstances amounts to a windfall, in that the statutory 15% exceeds the
> actual attorneys' fees incurred by CCB. The promissory note at issue in this case
> provides for "reasonable attorneys' fees" and is therefore subject to the provisions
> in G.S. 6-21.2 subsection (2), not subsection (1). Under subsection (1) an award
> of attorneys' fees must be supported by evidence and findings of fact supporting
> the reasonableness of the award, however, subsection (2) has predetermined that
> 15% is a reasonable amount. G.S. 6-21.2(2) expressly provides that when a
> contract authorizing attorneys' fees does not specify the fee percentage then it
> shall be construed to mean 15% of the "outstanding balance" owed on the
> instrument. In this case, the trial court did not err by calculating the fee awarded
> in accordance with the statutory mandate.

Trull, 124 N.C.App. at 493-494 (emphasis added). As this court "must apply the relevant state

law in determining the substantive rights and duties of the parties" in diversity actions, Auer v.

Kawasaki Motors Corp., U.S.A., 830 F.2d 535, 537 (4th Cir.1987) *(en banc)*, Trull lends

substantial support to plaintiff's argument that the phrase "which may be incurred" has no impact

on the award of fees under North Carolina law.  Further, a learned colleague, Honorable T.S.

Ellis, Senior United States District Judge for the Eastern District of Virginia, had occasion to

address the meaning of "actually incurred" in the context of an award of attorneys' fees under

Virginia law in Airlines Reporting Corp. v. Sarrion Travel, Inc., 846 F.Supp.2d 533 (E.D.Va.

2012).  Judge Ellis noted, as follows:

> "Actually incurred" is a past participle phrase being used as an adjective and, as
> such, is not restricted to referencing the past.  *See Waag v. Permann (In re
> Permann)*, 418 B.R. 373, 379 (BAP 9th Cir.2009) ("As noted in one leading
> grammar treatise, both present and past participles "can be used for referring to
> past present or future time" and the past participle 'signifies 'perfectiveness' or
> completion, but is not restricted to past time.' ") (quoting S. Chalker and E.
> Weiner, *The Oxford Dictionary of English Grammar* at pages 282 and 286–87
> (1994)).

Id. at 539, n. 7.  While this court is reminded of another's legal scholar's wisdom -- the late

Honorable H. Brent McKnight -- that "words have meaning," Judge Ellis's decision indicates

that the ordinary meaning of certain words does not always comport with initial impressions of

those words.  Indeed, as Judge Ellis determined, the phrase "actually incurred" in the context of

an award of attorneys' fees does not just mean past fees capable of inclusion in a lodestar figure,

see Robinson v. Equifax Information Services, LLC, 560 F.3d 235, 243–244 (4th Cir.2009), but

future fees such as for collection of the judgment and defense of this court's Judgment on appeal.

Thus, even where an agreement provides for an award of "attorneys' fees actually incurred," the

phrase encompasses future fees.

   If the award of attorneys' fees was governed by Chapter 6-21.2(1), the court would agree

that plaintiff would be limited to recovering its actual lodestar amount; however, plaintiff's

award is governed by Chapter 6-21.2(2), which provides for recovery of a flat 15 percent of the

-3-

indebtedness as attorneys' fees. Because it is the statute itself which allows the shifting of the fees, it is the statute itself which sets the amount of the fees. Thus, Chapter 6-21.2(2) operates not as a sword, but as a shield for this debtor. North Carolina law is very clear that where the contract "does not specify the fee percentage then it shall be construed to mean 15% of the outstanding balance owed …." Trull, 124 N.C.App. at 494. Neither North Carolina law nor federal decisions would support an inference that use of the phrase "actually incurred" in any way impacts a Chapter 6-21.2(2) award of attorneys' fees.

Even if this interpretation is wrong, it is readily apparent from its supplemental brief that plaintiff would have little trouble showing a loadstar amount well in excess of 15 percent of the outstanding indebtedness. Further, such interpretation actually works in favor of Defendant Griffin as it is apparent that an award of fees actually incurred would be well in excess of the statutory 15 percent.

As to Defendant Griffin's arguments concerning joint and several liability for any attorneys' fee award, the court will run such award just as it has run liability on the indebtedness, making both defendants jointly and severally liable for the attorneys' fee.

***

As all of the conditions of Chapter 6-21.2(2) have been met and it appearing that the use of the phrase "which may be incurred" in the guaranty does not alter the statutory obligation, the court will award an attorneys' fee of $2,915,279.33.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Attorney's Fees (#301) is **GRANTED** as previously provided in Order (#357) and further **GRANTED** as to the amount of

-4-

such award, which the court determines to be $2,915,279.33, for which Defendants Jones and

Griffin are jointly and severally liable.


**IT IS FURTHER ORDERED** that the Clerk enter an Amended Judgment to reflect the

damages awarded by the Jury in the amount of $18,304,464.47, an award of $8,451,630.54 in

prejudgment interest, and an award of attorneys' fees in the amount of $2,915,279.33, for a total

award of $29,671,374.30, in favor of plaintiff and against Defendants Jones and Griffin, both

jointly and severally, and that such award run with interest at the lawful federal Judgment rate,

*nunc pro tunc*, from the date the original Judgment (#294) was entered.


Signed: March 20, 2015


Max O. Cogburn Jr.
United States District Judge


-5-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00404-FDW-DSC

| | | |
|---|---|---|
| AMERICAN FIRST FEDERAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ZARIA PROPERTIES, LLC, LENRAE | ) | |
| WEAVER and HASSAN RADMANESH, | ) | ORDER |
| | ) | |
| Defendants and Third Party | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NEW DOMINION BANK, INC. and | ) | |
| GREGORY GREER, | ) | |
| | ) | |
| Third Party Defendants. | ) | |
| | ) | |

THIS MATTER is before the Court on several motions by Plaintiff and Third Party

Defendants.  In September 2016, Third Party Defendants filed a Motion for Summary Judgment

as to Third Party Complaint (Doc. No. 29), and Plaintiff filed a Motion for Summary Judgment as

to All Claims and Counterclaims (Doc. No. 32).  After all parties fully briefed the motions, the

Court held a hearing on February 9, 2017.  At the conclusion of the hearing, the Court entered an

oral ruling granting the motions for summary judgment and instructing the parties to file

supplemental briefs or motions regarding an award for attorneys' fees and costs.  Thereafter, Third

Party Defendants filed a Motion for Attorneys' Fees and Costs with a supporting affidavit (Doc.

Nos. 59-60), and Plaintiff filed a Brief on Propriety of an Award of Attorney's Fees with

supporting affidavits (Doc. Nos. 61-63).  These motions are also fully briefed, and the matter is

1

ripe for review.  For the reasons that follow, Third Party Defendants' Motion for Summary

Judgment (Doc. No. 29) is GRANTED, Plaintiff's Motion for Summary Judgment (Doc. No. 32)

is GRANTED, and Third Party Defendants' Motion for Attorneys' Fees and Costs (Doc. No. 59)

is DENIED.

## I.  BACKGROUND

In 2005, Defendants Weaver and Radmanesh became interested in purchasing two

undeveloped residential lots near Lake Norman (the "Property").  They formed Defendant Zaria

Properties, LLC ("Zaria," and together with Weaver and Radmanesh, "Borrowers") for the sole

purpose of holding the Property.  (Doc. No. 30-2, p. 6; Doc. No. 30-3, p. 14).  In 2006, Borrowers

executed contracts to purchase the lots for $250,000 and $150,000.  (Doc. No. 30-2, p. 25, Doc.

No. 30-3, p. 13).  Nearly two years later, in 2008, Borrowers pursued and obtained a loan from

Third Party Defendant New Dominion Bank ("NDB") to purchase the Property.  (Doc. No. 1-1).

NDB furnished Borrowers with appraisals ordered by the bank appraising the Property at $270,000

and $170,000.  (Doc. No. 30-2, p. 10, Doc. No. 30-3, p. 14).

On August 13, 2008, Zaria executed a Promissory Note (the "Note") that obligated Zaria

to pay to NDB the principal amount of $471,750 by August 10, 2010.  (Doc. No. 1-1, p. 1).

Radmanesh and Weaver each executed a Guaranty of Payment Agreement (the "Guaranties")

unconditionally guaranteeing the payment of all amounts due under the Note.  (Doc. No. 1-1,

p. 18-21).  Thereafter, Borrowers executed several successive amended agreements extending the

time within which the debt had to be repaid.  (Doc. No. 1-1, pp. 3-14).

The Guaranties included a waiver clause in which Radmanesh and Weaver each

> waive[d] all rights of offset and counterclaims against Bank or
> Borrower, all defenses to the enforceability of the[e] Guaranty, all

2

> defenses based on suretyship or impairment of collateral, and rights
> under NCGS Section 26-7 et seq. or any similar or subsequent laws,
> and any defenses which the undersigned or the Borrower may assert
> on the Obligations, including but not limited to, failure of
> consideration, breach of warranty, theft, statute of frauds,
> bankruptcy, lack of legal capacity, lender liability, deceptive trade
> practices accord and satisfaction or usury.

(Doc. No. 1-1, pp. 18, 20). Likewise, in one amended agreement extending the loan's due date,

Zaria agreed to "waive all claims, defenses, setoffs, or counterclaims relating to the [loan], or any

document securing the [loan], that [it] may have." (Doc. No. 1-1, p. 14). In another, Weaver and

Radmanesh "unconditionally consent[ed] to the modification [and] acknowledge[d] that the terms

and conditions of the [loan] and the Guaranty continue in full force and effect." (Doc. No. 30-3).

Despite having been in the business of owning and managing commercial and residential

properties for nearly a decade, (Doc. No. 30-2, pp. 3-7; Doc. No. 30-3, pp. 4-5, 23-25, 28),

Borrowers chose not to verify the appraisals ordered by NDB, chose not to order their own

appraisals, and chose not to conduct any due diligence regarding the Property's value prior to

obtaining the loan. (Doc. No. 30-2, pp. 10-12; Doc. No. 30-3, pp. 15-18). They also admit to not

reading the loan documents before signing them. (Doc. No. 30-2, pp. 8, 16-20; Doc. No. 30-3, pp.

7-8, 11, 31-32).

On December 19, 2014, NDB sold its interest in the loan documents to Plaintiff, (Doc. 1-1,

p. 15), and Plaintiff demanded payment (Id. at 16). When Borrowers failed to make payments as

required by the loan documents, Plaintiff filed the instant action for breach of contract and breach

of personal guaranties, as well as for attorneys' fees and costs. (Doc. No. 1).

Borrowers raised several affirmative defenses and counterclaims against Plaintiff and filed

a third party complaint against NDB and Greer, a senior Vice President at NDB who handled the

3

loan at issue. (Doc. No. 13). Both Plaintiff and Third Party Defendants filed motions for summary judgment asserting, *inter alia*, that the waiver provisions contained in the loan documents bar all of Borrowers' defenses, claims, and counterclaims.

## II.  STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003).  The court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the burden to show the court it must prevail because there are no genuine issues of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), and the non-moving party must then demonstrate the existence of "evidence from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 257.  In making its decision, the Court must view the facts and all inferences drawn from the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); *see also* Henson v. Jefferson, N.C. App. 204, 200 S.E.2d 812 (1973).

## III. ANALYSIS

### A.  Borrowers breached their contract and personal guaranties.

Borrowers do not dispute that they executed the Note and subsequent modifications or that they failed to pay the amount due under the Note.  Instead, Borrowers contend that the Allonge, which purports to transfer ownership of the Note from NDB to Plaintiff, is invalid because it

4

incorrectly names "*First American Federal, Inc.*" as the new noteholder, as opposed to Plaintiff American First Federal, Inc. (Doc. No. 1-1, Exhibit 5).

Plaintiff has the burden of establishing that it is the holder of the Note or has otherwise acquired the rights of the holder. First Fed. Bank v. Aldridge, 749 S.E.2d 289, 291 (N.C. Ct. App. 2013). "Where, as in this case, a negotiable instrument is made payable to order, one becomes a holder of the instrument when it is properly indorsed and delivered to him." Econo-Travel Motor Hotel Corp. v. Taylor, 271 S.E.2d 54, 57 (N.C. 1980).

Under N.C. Gen. Stat. § 25-3-205(a), an indorsement is specially indorsed if it "is made by the holder of an instrument" and it "identifies a person to whom it makes the instrument payable." "When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person." Id. The intent of the signer determines to whom the note is payable, even if the indorser uses the wrong name. Id. § 25-3-110(a) ("The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person."); see id. § 25-3-205(a) ("The principles stated in G.S. 25-3-110 apply to special indorsements.").[1]

Here, NDB specially indorsed the Allonge by making the instrument payable to an identified person. Although the Allonge incorrectly names "First American Federal, Inc.," rather than "American First Federal, Inc.," other documents show that NDB, the signer, intended to make the Note payable to Plaintiff. For example, the Loan Sale Contract under which Plaintiff purchased the debt identifies Plaintiff as the purchaser (Doc. No. 33-1, p. 25, Ex. H) and includes a "Form of

---

[1] The Commentary to the Uniform Commercial Code provides the following illustration: "The drawer intends to pay a person known to the drawer as John Smith. In fact that person's name is James Smith or John Jones or some other entirely different name. If the check identifies the payee as John Smith, it is nevertheless payable to the person intended by the drawer." N.C. Gen. Stat. § 25-3-110 Uniform Commercial Code Comment 1.

5

Allonge" that uses Plaintiff's correct name (Doc. No. 33-1, p. 42, Ex. H). The Assignment of Loan and Other Documents further provides that Plaintiff is the assignee of the loan documents. (Doc. No. 33-1, p. 54-55, Exh. I). Even in the light most favorable to Borrowers, there is no genuine dispute of material fact that NDB voluntarily delivered the Note and other loan documents to Plaintiff with the intent of transferring them to Plaintiff; therefore, Plaintiff is the holder of the Note.[2] Because Borrowers do not dispute that they are in default under the terms of the loan documents, Plaintiff is entitled to summary judgment on its claims against Borrowers for breach of contract and guaranties unless Borrowers can establish a valid defense.

**B. Borrowers expressly waived all defenses, claims, and counterclaims.**

Each of Borrowers' defenses, counterclaims, and claims hinge on certain alleged misrepresentations relating to the loan. Plaintiff and Third Party Defendants contend that all of Borrowers' defenses, claims, and counterclaims are barred by clear, unambiguous waivers contained in the loan documents. Borrowers, on the other hand, contend that genuine issues of material fact exist as to the enforceability of the waiver provisions, arguing that the loan documents containing the provisions were gained through inequality of bargaining power.

The North Carolina Supreme Court recently reaffirmed the enforceability of waiver provisions in loan documents. In Ussery v. BB&T, BB&T made a commercial loan to the plaintiff, and the parties subsequently entered into six loan modification agreements. 777 S.E.2d 272, 274-75 (N.C. 2015). Each modification agreement contained waiver language similar to the

---

[2] Even if the Note is payable to a fictitious payee, Plaintiff, as possessor of the Note, is still the holder of the Note. N.C. Gen. Stat. § 25-3-404(b) ("If . . . (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement: (1) Any person in possession of the instrument is its holder.").

6

language used in the loan documents at issue here. Id. at 275. The North Carolina Supreme Court held that summary judgment in favor of the bank was proper because the waiver language was "clear and unambiguous," it reaffirmed the plaintiff's loan obligations, and it clearly waived any claims and defenses to the plaintiff's indebtedness to the bank. Id. at 280-82. The court explained: "Given that parties are generally free to waive various rights, plaintiff accepted the terms of the modification agreements, which benefitted him, in exchange for plaintiff's reaffirmation of his loan obligation and waiver of his offsets and defenses against BB&T." Id. at 281. In so holding, the Court recognized the enforceability of waiver provisions in accordance with general principles of contract interpretation. Id.

Here, as in Ussery, the plain language of the loan documents clearly and unambiguously waives all rights of offsets and counterclaims, all defenses to enforceability, and any defenses Borrowers may assert on the obligations. Borrowers were free to have made other investment decisions or to have elected not to invest at all in the Property. Instead, they voluntarily sought credit from NDB to fund their purchase, and in exchange for executing the loan documents, Borrowers received benefits, including receiving loan proceeds as well as multiple extensions of the maturity date of the Note, effectively stalling foreclosure. The Court has not found any case, and Borrowers have not cited to one, in which a party was found to have been deprived of its free will so as to constitute duress while still receiving benefits under a transaction.

Furthermore, based on the undisputed facts, no reasonable jury could find that Borrowers are the unsophisticated buyers they claim to be or that they were so unequal in bargaining power so as to render the waiver provisions invalid. For example, this was not Weaver and Radmanesh's first real estate purchase. By their own admission, they own five or six real estate properties,

7

including both residential and commercial properties, and Radmanesh has been engaged in purchasing and managing rental property for many years (Doc. No. 30-2, p. 3-7, 11). Likewise, in a sophisticated and calculated decision, Weaver and Radmanesh formed Zaria, a limited liability company, for the sole purpose of purchasing the Property at issue. While Borrowers did not have legal representation in purchasing this Property, Radmanesh admits that this is the first time he purchased property without legal representation. (Id. at 8). In addition, as in Ussery, Borrowers negotiated modifications of the loan documents that favored them by, for example, extending the maturity date of the loan and forestalling foreclosure proceedings in exchange for signing the modifications. The fact that Borrowers chose not to conduct any due diligence regarding the value of the Property and did not read the loan documents prior to signing them does not change the analysis. See Ussery, 777 S.E.2d at 279 ("One who executes a written instrument is ordinarily charged with knowledge of its contents, and he may not base his action on ignorance of the legal effect of its provisions in the absence of considerations such as fraud or mistake.").[3] Accordingly, because Borrowers expressly waived their defenses, claims, and counterclaims, the Court grants summary judgment in favor of both Plaintiff and Third Party Defendants.

**C. Attorneys' Fees and Costs**

**1. Plaintiff**

In addition to the recovery of the outstanding indebtedness, Plaintiff also seeks attorneys' fees and costs in the amount of $64,563.75 pursuant to N.C. Gen. Stat. §§ 6-21.2 and 75-16.1.

---

[3] In both their written brief and oral argument, Borrowers argued that NDB and Greer's alleged statements, when viewed collectively, constituted fraud; however, Third Party Defendants did not owe Borrowers a fiduciary duty or a duty to disclose financial information regarding the Property or developer, and Borrowers elected not to conduct any due diligence. Borrowers have failed to create a genuine issue of material fact to establish that any statements of Third Party Defendants amounted to fraud.

Under North Carolina law, a party generally cannot recover attorney's fees "unless such a recovery is expressly authorized by statute." Stillwell Enters., Inc. v. Interstate Equip. Co., 266 S.E.2d 812, 814 (N.C. 1980). Section 6-21.2 authorizes the awarding of attorneys' fees and costs in actions to enforce obligations owed under a promissory note or other "evidence of indebtedness" that provides for the payment of attorneys' fees. N.C. Gen. Stat. § 6-21.2. To be entitled to attorneys' fees under this section, the holder of the note must notify all parties sought to be held on the obligation that the creditor will seek to enforce the attorneys' fees provision contained in the note and that if the party pays the outstanding balance within five days from the mailing of such notice, then the attorneys' fee obligation shall be void. Id. § 6-21.2(5). The statute further provides that when the note or other evidence of indebtedness provides for the payment of reasonable attorneys' fees without "specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the 'outstanding balance' owing on said note." Id. § 6-21.2(2).

Here, both the Note and the Guaranties contain express language authorizing the collection of all costs of collection, including attorneys' fees, in the event that an attorney is hired to collect the debt. (Doc. No. 31-1, Ex. A-C). Upon default by Borrowers under the terms of the Note, Plaintiff, through counsel, sent to Borrowers letters dated August 21, 2015, demanding payment in full and advising Borrowers that if payment was not made within five days, Plaintiff would be entitled to collect its attorneys' fees up to fifteen percent (15%) of the total due. (Doc. No. 1-6). Borrowers received the letters, (Doc. No. 2, p. 3, ¶ 19), and they failed to pay as required. Plaintiff is, therefore, entitled to its reasonable attorney's fees and costs under N.C. Gen .Stat. § 6-21.2.

Since the Note and Guaranties do not specify an amount of fees to be awarded, Plaintiff is entitled to recover fees in an amount equal to fifteen percent of the outstanding balance of the

9

Note. N.C. Gen. Stat. § 6-21.2(2). Plaintiff, however, seeks only $64,563.75 in attorneys' fees

and costs, which is less than fifteen percent of $455,686.22, the total amount due under the Note.

Considering that the North Carolina statute "has predetermined that 15% is a reasonable amount,"

RC Assocs. v. Regency Ventures, Inc., 432 S.E.2d 394, 397 (1993), an amount less than that is

also reasonable. See Telerent Leasing Corp. v. Boaziz, 686 S.E.2d 520, 524 (N.C. Ct. App. 2009)

(holding the trial court did not err in awarding attorneys' fees that were "well below the statutory

ceiling of fifteen percent"); Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc., 632 S.E.2d

192, 197 (N.C. Ct. App. 2006) (citation omitted) (affirming the trial court's award of attorney fees

when "the trial court granted attorney fees in an amount less than fifteen percent of the $165,000

award"). The affidavits of Plaintiff's attorney and Vice President, as well as the billing statements

that show the actual work performed and the attorneys' hourly rates, support the award of

$64,563.75 in reasonable attorneys' fees and costs.

Contrary to Borrowers' argument, Plaintiff was not required to allocate its fees incurred as

a result of its work on its breach of contract claim versus defending against Borrowers'

counterclaims because the counterclaims were raised in defense of Plaintiff's contract claims,

making them reasonably related. See Telerent Leasing Corp., 868 S.E.2d at 524 ("[W]hen other

actions are reasonably related to the collection of the underlying note sued upon, attorneys' fees

incurred therein may properly be awarded under G.S. 6–21.2[.]" (citation omitted)). Moreover,

the fact that the invoices and billing statements from Plaintiff's attorneys are billed to "First

Commerce, LLC," as opposed to Plaintiff, is not fatal to Plaintiff's recovery of fees. It is obvious

from a brief scan of the affidavits and invoices attached to Plaintiff's brief that the invoices

represent the legal fees and costs incurred by Plaintiff. For example, the affidavit of Plaintiff's

10

Vice President states that "Plaintiff was initially represented in this matter by Henderson, Nystrom,

Fletcher & Tydings, PLLC and attorney John Fletcher, through September 2015. Thereafter,

Plaintiff was represented by Smith Debnam, and attorney John Sperati." (Doc. No. 63, pp. 3-4).

Likewise, Sperati's affidavit explains that "Plaintiff has incurred $5,098.00 in attorneys' fees and

costs for services provided by my firm." (Doc. No. 62, p. 3). Therefore, for the reasons explained

above, the Court awards Plaintiff $64,563.75 in reasonable attorneys' fees and costs under N.C.

Gen. Stat. § 6-21.2.

Plaintiff also seeks attorneys' fees and costs under N.C. Gen. Stat. § 75-16.1. Section

75-16.1(2) provides that in any suit alleging an unfair or deceptive trade practices violation under

Chapter 75, the Court may award reasonable attorneys' fees to the prevailing party if "[t]he party

instituting the action knew, or should have known, the action was frivolous and malicious." N.C.

Gen. Stat. § 75-16.1. "A claim is frivolous if a proponent can present no rational argument based

upon the evidence or law in support of [it]. A claim is malicious if it is wrongful and done

intentionally without just cause or excuse or as a result of ill will." McKinnon v. CV Indus., Inc.,

745 S.E.2d 343, 350 (N.C. Ct. App. 2013) (citations and quotation marks omitted). "Award or

denial of such fees . . . is within the discretion of the trial judge." Lincoln v. Bueche, 601 S.E.2d

237, 244 (N.C. Ct. App. 2004).

Plaintiff argues that Borrowers knew or should have known their action was frivolous and

malicious because there was no rational basis in law or fact supporting their Chapter 75

counterclaim, the counterclaim was based upon the alleged acts/omissions of a non-litigant, and

they failed to withdraw their counterclaim after discovery failed to produce evidence to support

the claim. The fact that Borrowers' unfair and deceptive trade practices claim was legally

11

insufficient, however, does not render it frivolous and malicious. See Basnight v. Diamond Developers, Inc., 178 F. Supp. 2d 589, 593 (M.D.N.C. 2001). In fact, the Court did not even address the merits of Borrowers' unfair and deceptive trade practices claim because it concluded Borrowers had waived all claims and defenses. Although the Court disagreed with Borrowers' legal arguments and reasoning, the Court is not willing to state that their unfair and deceptive trade practices counterclaim against Plaintiff was both frivolous and malicious. Accordingly, Plaintiff is not entitled to attorneys' fees under N.C. Gen. Stat. § 75-16.1.

## 2. Third Party Defendants

Third Party Defendants seek attorneys' fees and costs in the amount of $85,067.13 pursuant to N.C. Gen. Stat. § 75-16.1(2) for its defense of Borrowers' Chapter 75 claim. Third Party Defendants argue that Borrowers should have known their action was frivolous and malicious because Borrowers cited to cases indicating their claims would fail as a matter of law and because they alleged conclusory facts in the face of sworn evidence to the contrary. (Doc. No. 59). As explained above, however, the fact that Borrowers' unfair and deceptive trade practices claim was legally insufficient does not render it frivolous and malicious, see Basnight, 178 F. Supp. 2d at 593, especially in light of the fact that the Court did not address the merits of Borrowers' Chapter 75 claim. Although the Court disagreed with Borrowers' legal arguments and reasoning, the Court is not willing to state that their unfair and deceptive trade practices claim against Third Party Defendants was frivolous and malicious. Accordingly, Third Party Defendants' Motion for Attorneys' Fees and Costs is denied.

12

## IV. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Third Party Defendants' Motion for Summary Judgment (Doc. No. 29) is GRANTED;

2. Plaintiff's Motion for Summary Judgment (Doc. No. 32) is GRANTED.  For the reasons

   stated above, Plaintiff is entitled to reasonable attorneys' fees and costs in the amount of

   $64,563.75; and

3. Third Party Defendants' Motion for Attorneys' Fees and Costs (Doc. No. 59) is DENIED.

IT IS SO ORDERED.


Signed: June 19, 2017


Frank D. Whitney
Chief United States District Judge

13

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

CALVIN RAY KENNEDY a/k/a
C. RAY KENNEDY and
CYNTHIA M. KENNEDY,

CASE NO.: 20-30208
CHAPTER 11

Debtors.

## CERTIFICATE OF SERVICE

I, William Walt Pettit as attorney of record for Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely as Owner Trustee of Residential Credit Opportunities Trust II, hereby certify that on the ___6___ day of February, 2023, I served a copy of the Memorandum of Law in Support of Application for Compensation by either electronic notice in accordance with the local rules or by depositing the same, enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United states Postal Service, said envelope being addressed as follows:

Calvin Ray Kenney
Cynthia M Kennedy
4324 Satterwythe Lane
Charlotte NC 28215

Stacy Cordes, Esq.
(by ECF service)

Shelley Abel, Esq.
U.S. Bankruptcy Administrator's Office
(by ECF service)

James H. Henderson, Esq.
(by ECF service)

HUTCHENS LAW FIRM LLP
Attorneys for Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely as Owner Trustee of Residential Credit Opportunities Trust II

By:_____
William Walt Pettit
N.C. Bar No. 9407
6230 Fairview Road, Suite 315
Charlotte, N.C. 28210
Telephone: (704) 362-9255
Email: walt.pettit@hutchenslawfirm.com

6