UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | Case No. 20-30208 |
| CALVIN RAY KENNEDY ) | Chapter 11 |
| CYNTHIA M. KENNEDY ) | |
| ) | |
| Debtors. | |

**MEMORANDUM IN SUPPORT OF DEBTORS' OBJECTION TO APPLICATION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE OF RESIDENTIAL CREDIT OPPORTUNITIES TRUST, II FOR ATTORNEYS' FEES AND EXPENSES [ECF DOC. NO. 133]**

**SCOPE OF MEMORANDUM**

This Memorandum addresses a single issue which has been raised in the Debtors' Objection to the Application of Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely as owners trustee of Residential Credit Opportunities Trust, II ("Wilmington") for Attorneys' Fees and Expenses (the "Application") [ECF DOC. NO. 133]. The Application includes $450.00 for 1.5 hours of time by the Hutchens Law Firm ("Hutchens") on March 29, 2022 for "[c]ourt appearance in regarding [sic] Application of Attorney Fees and Expenses". The Debtors objected to and requested a hearing on the Application on March 19, 2022. The Debtors' Objection[1] includes an objection to the Court allowing Wilmington attorneys' fees and expenses related to defending the Application.[2]

The request for fees incurred by Hutchens in connection with defending the Application, whether incurred prior or subsequent to the Application (or subsequent applications), are referred to herein as "Fees on Fees". The Debtors believe that having the Court rule on the allowability of any Fees on Fees in this case may assist the parties in settling their differences.[3] This Memorandum is limited to addressing the Fees on Fees issue.[4] **The Court's January 23, 2023 Order Setting Hearings**

---

[1] The Debtors' original objection was filed On March 19, 2022 [ECF DOC. NO. 135]. At the direction of the Court, the Debtors also filed a Supplemental Objection on August 29, 2022 [ECF DOC. NO. 156].

[2] The Application includes $450.00 for 1.5 hours of time by The Hutchens Law Firm on March 29, 2022 for "[c]ourt appearance in regarding [sic] Application of Attorney Fees and Expenses

[3] The Debtors made an offer to Wilmington to settle the Objection to the Application on August 16, 2022. Wilmington has not responded to the settlement offer. Wilmington, ostensibly through its servicing agent PHH, has in general made little effort to settle the issues in this proceeding.

[4] The Debtors do not waive any other objections they have to the requested fees. For instance, the Application contains no analysis whatsoever of the relevant factors considered by courts in determining the reasonableness of attorneys' fees and expenses. See, e.g., Reply of Debtors [ECF DOC. NO. 152], which goes into detail concerning these factors. Despite the fact that Wilmington's Application did not provide a prima facie case for the allowance of such fees, the Court instructed the Debtors to file a Supplemental Objection. This essentially shifted the burden of proof to the Debtor, and the Court did not require Wilmington to

***and Deadlines [ECF DOC. NO. 163] limits the scope of the February 21, 2023 hearing to the Fees on Fees issue.*** On February 6, 2023, Wilmington filed a Memorandum of Law in Support of Application for Compensation (the "Memorandum") [ECF DOC. NO. 164]. The Memorandum briefly touches on the Fees on Fees issue. However, in large part, the Memorandum broadly addresses 506(b) fee applications, again without addressing the relevant factors which courts must review in determining the reasonableness of legal fees. The Memorandum also argues that Ramsey-Peele is liable for attorneys' fees equal to 15% of the outstanding balance under NCGS § 6-21.2(2), or $440,000.00. Ramsey-Peele's liability for attorneys' fees is not an issue before this Court.[5]

## BACKGROUND

On February 19, 2020, Calvin and Cynthia Kennedy filed this Chapter 11 bankruptcy proceeding. The precipitating cause of the filing was the avoidance of a judgment in excess of $2.1 Million, which had been domesticated in Mecklenburg County, North Carolina. Wilmington's most valuable collateral, two parcels of commercial real property located in Charlotte, North Carolina, was scheduled as having an aggregate value of $3,496,000.00.[6][7] This real property was appraised in late 2016 and early 2017 (by Wilmington's predecessor in interest) as having an aggregate value of $5,810,000.00. Wilmington's claim was scheduled as being fully secured and in the amount of $2,950,000.00. Wilmington's Proof of Claim (to which the Debtors did not object) shows that $2,927,332.40 was owed as of April 9, 2020.

An Order confirming the Debtors' Chapter 11 Plan was entered on January 28, 2022 [ECF DOC. NO. 126]. On March 4, 2022, Wilmington filed an Application seeking fees and expenses of approximately $75,000.00. In addition to not providing the Court with any analysis whatsoever of the lodestar factors, the Application does not cite any North Carolina statutory authority the claim. The Debtors have filed several objections to the Application, and the Debtors have served Wilmington and PHH with written discovery concerning the Application. Wilmington and PHH have filed objections to the discovery and motions for protective orders. At previous hearings on this matter, the Court has encouraged the parties to settle this matter. The Court has also effectively blocked the Debtors' discovery efforts.

## ARGUMENT

The Debtors do not dispute that Wilmington is the holder of an oversecured claim. The Debtors admit that the documents attached to Wilmington's proof of claim bear their signatures. The Debtors do not dispute that Wilmington, as an oversecured creditor, is permitted to recover "...any

---

supplement its Application to address the usual and necessary factors.

[5] To the extent Wilmington contends that NCGS § 6-21.2(2) provides the basis for an assessment of attorneys' fees against the Debtors, it is incorrect. NCGS § 6-21.2 applies only to obligations to pay attorneys' fees on notes and the like if such evidence of indebtedness is collected **"after maturity"**. The debt owed by the Debtors to Wilmington has not matured and, as such, NCGS § 6-21.2 cannot be the basis for Wilmington's claim for attorneys' fees.

[6] Wilmington also had the guarantee of the Ramsey-Peele Corporation, d/b/a University Child Development Center ("Ramsey-Peele"), which is owned by the Debtors. Ramsey-Peele operates three day care centers in Charlotte, two of which are leased from the Debtors. Wilmington also has an Assignment of Leases and Rents and a Security Agreement with the Debtors, the value of which is in addition to the value of the real property collateral.

[7] Wilmington has a first priority deed of trust on this real property.

***reasonable*** fees, costs or charges provided for under the agreement or State statute under which such claims arose." 11 U.S.C. § 506(b) (emphasis added). The fees requested in the Application are not reasonable under the circumstances of this case, as set forth in the Debtors' prior pleadings.

1. **The Supreme Court's Baker Botts holding prohibits fees on fees under 11 U.S.C. § 506(b)**

In *Baker Botts, LLP v ASARCO, LLC*, 135 S. Ct. 2158 (2015), the Supreme Court held that attorneys' fees incurred in defending a fee application under 11 U.S.C. § 330(a) are not permitted. The *Baker Botts* court reasoned that, because 11 U.S.C.S. § 330(a)(1) does not explicitly override the American Rule with respect to fee-defense litigation, it does not permit bankruptcy courts to award compensation for such litigation. Likewise, 11 U.S.C. § 506(b) does not explicitly override the American Rule with respect to fee-defense litigation. In its Memorandum, Wilmington argues that the *Baker Botts* holding is inapplicable to this case, in that it focuses on Section 330(a) rather than Section 506(b). Wilmington seeks to distinguish the two sections, arguing that while Section 330 requires a finding that fees sought constitute "...reasonable compensation for actual, necessary services", and that "[s]ection 506(b) contains no such limitation constraining the reading of fees awarded to creditors." This is a distinction without a difference. Section 506(b) does limit attorneys' fees to only those which are determined to be reasonable. For fees to be reasonable, a court is required to consider whether an attorney's services are actual and necessary. *Baker Botts* does not give Wilmington nor its counsel a *carte blanche* to assess a debtor in a bankruptcy proceeding with any and all attorneys' fees. Wilmington's loan documentation (portions of which are cited in Wilmington's Memorandum, pp. 2-3) also limits the Debtors' obligation to pay attorneys' fees to only those fees which are "reasonable". § 506(b)'s reasonableness requirement ensures that creditors are not given a 'blank check' to incur fees that to be charged against the estate.

The *Baker Botts* holding has been applied by at least one other Courts in the context of an objection to attorneys' fee asserted an oversecured creditor pursuant to 11 U.S.C. § 506(b). *In re Tatum*, 2017 Bankr. LEXIS 1306 (Bankr. N.J. 2017).

2. **The Wilmington loan documents do not explicitly allow for the recovery of fees on fees**

The Wilmington loan documentation, although broad, does not explicitly allow for the recovery of fees on fees. Under the American Rule, each party pays his own attorneys' fees, "win or lose." Section 506(b) allows an oversecured creditor to recover fees from a bankruptcy estate (the debtor) if such right is provided for by agreement or state statute. And such right—under either an agreement or statute—**must be explicit**. *Artho v. Happy State Bank (In re Artho)*, 2018 Bankr. LEXIS 2912 (N.D. Texas 2018). In *In re 218 Jackson LLC*, 2022 Bankr. LEXIS 3124, 646 B.R. 533 (M.D. Fla. 2022), the Court "...carefully reviewed the Loan Agreement and Mortgage and could not identify language that would allow accrual of Late Fees after acceleration." As a result, the Court found that Late Fees were not enforceable against the Debtor under the Loan Agreement and not allowed under § 502. Because the Late Fees are not allowed under § 502, they were not reasonable under § 506.

The court in *Batsidis v. Wallack Mgt. Co., Inc.*, 126 A.D.3d 551 (N.Y. App. Div. 2015) found that legal costs incurred in the process of recovering attorneys' fees are not themselves recoverable unless the fee-shifting agreement contains "unambiguous language providing for the recovery of fees on fees". *Id.* Finally, the court in *605 Fifth Prop. Owner, LLC v. Abasic, S.A.*, 2022 U.S. Dist. LEXIS 76783 (S.D.N.Y. 2022) was asked to approve the plaintiff's attorneys' fees incurred in connection with

defending an objection to legal fees related to enforcing an unconditional lease guarantee. The court denied the request for fees on fees, finding that "[a]lthough the Guarantee's fee-shifting language is broad, it contains no explicit language authorizing recovery for fees on fees."

3. **There is no express statutory authorization for fees on fees**

"In our legal system, no attorneys, regardless of whether they practice in bankruptcy, are entitled to receive fees for fee-defense litigation absent express statutory authorization." *See Baker Botts*, 576 U.S. 121, 133-34, 135 S. Ct. 2158, 192 L. Ed. 2d 208 (2015). "Because §330(a)(1) does not explicitly override the American Rule with respect to fee-defense litigation, it does not permit bankruptcy courts to award compensation for such litigation." *Id.* Because § 506(b) also does not explicitly override the American Rule with respect to fee-defense litigation, the same reasoning would apply to this proceeding, and the fees on fees should not be allowed. *See also McMahan v. Toto*, 311 F.3d 1077, 1085 (11th Cir. 2002) (fees incurred for litigating the amount of fees is not recoverable).

4. **The allowance of fees on fees under the circumstances of this case should be disallowed as a matter of policy**

The allowance of fees on fees creates incentives for oversecured lenders such as Wilmington to be uncooperative and excessively litigious. Wilmington has in fact been uncooperative and excessivley litigious. The Debtors have a systemic concern, arising from a combination of state debtor-creditor law (including the breadth of security interests available to lenders), and the permissibility of default-interest-rate and fee-shifting provisions in loan documents and Bankruptcy Code section 506(b). The allowance of fees on fees allocates too much power to oversecured creditors and distorts the leverage and negotiation dynamic intended when the Bankruptcy Code was first enacted in 1978. *See, e.g.*, Harvey R. Miller & Shai Y. Waisman, *Is Chapter 11 Bankrupt?*, 47 B.C. L. REV. 129, 130-31 (2005); Jay Lawrence Westbrook, *The Control of Wealth in Bankruptcy*, 82 TEX. L. REV. 795, 843-44 (2004); Douglas G. Baird & Robert K. Rasmussen, *The End of Bankruptcy*, 55 STAN. L. REV. 751, 754-55 (2002).

Based on the forgoing, the Court should enter an order disallowing fees on fees requested by Wilmington in connection with defending the Debtors' good faith objections to the Application.

Dated: February 6, 2023

**THE HENDERSON LAW FIRM**

 /s/James H. Henderson
James H. Henderson
State Bar No. 13536
2030 South Tryon St., Ste. 3H
Charlotte NC 28203
Telephone:    704.333.3444
Facsimile:     704.333.5003
Email:          henderson@title11.com