UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In re:                                          )
                                                )  Case No.: 20-30208
RAY and CYNTHIA KENNEDY,                         )
                                                )
                                                )  Chapter 11
                            Debtors.            )

# CHAPTER 11 POSTCONFIRMATION REPORT

**REPORTING PERIOD:**

     FROM:                        December 1, 2022

     TO:                            December 31, 2022

**DATE PLAN CONFIRMED:**          **January 28, 2022**

**EFFECTIVE DATE OF PLAN:**       **March 29, 2022**
☐ Effective Date has not yet occurred.

**ESTIMATED CLOSING DATE:**       **May 1, 2023**

I certify under penalty of perjury that the information contained in this Postconfirmation Report is true and correct to the best of my knowledge and belief.

| **DEBTOR / TRUSTEE / LIQUIDATING AGENT**: | **DEBTOR 2** (if applicable): |
|---|---|
| Signature: _____ | Signature: _____ |
| Printed:     (see p. 2 signature of Ray Kennedy) | Printed:     (see p. 2 signature of Cynthia Kennedy |
| Title:     Individual | Date:     January 31, 2023 |
| Date:     January 31, 2023 | |

*Penalty for making a false statement or filing a false report: Fine of up $500,000.00 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.*

**DESCRIPTION OF PROGRESS TOWARD CONSUMMATION OF PLAN & CASE CLOSING:**
What conditions to the effective date of the plan have and have not occurred? What other specific matters does the Court need to resolve prior to closing the case (e.g., adversary proceedings, claim disputes, filing fee applications, etc.)? Please indicate the nature of each matter and an estimated time frame that these matters will be resolved:

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
DIVISION

In re:                                         )
                                               )   Case No.:
              `                                )
                                               )
                                               )
_____ )

## CHAPTER 11 POSTCONFIRMATION REPORT

**REPORTING PERIOD:**

        FROM:                          December 1, 2022

        TO:                            December 31, 2022

**DATE PLAN CONFIRMED:**              **January 28, 2022**

**EFFECTIVE DATE OF PLAN:**

        ☐ Effective Date has not yet occurred.

**ESTIMATED CLOSING DATE:**

I certify under penalty of perjury that the information contained in this Postconfirmation Report is true and correct to the best of my knowledge and belief.

| DEBTOR / TRUSTEE / LIQUIDATING AGENT: | DEBTOR 2 (if applicable): |
|---|---|
| Signature: *Ray Kennedy* | Signature: *Cynthia Kennedy* |
| Printed:    Ray Kennedy | Printed:    Cynthia Kennedy |
| Title:    Individual | Date:    January 31, 2023 |
| Date:    January 31, 2023 | |

*Penalty for making a false statement or filing a false report: Fine of up $500,000.00 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.*

**DESCRIPTION OF PROGRESS TOWARD CONSUMMATION OF PLAN & CASE CLOSING:**
What conditions to the effective date of the plan have and have not occurred? What other specific matters does the Court need to resolve prior to closing the case (e.g., adversary proceedings, claim disputes, filing fee applications, etc.)? Please indicate the nature of each matter and an estimated time frame that these matters will be resolved:

☐   Check here if attaching an income statement in lieu of this cash receipts and disbursements page.

| CASH RECEIPTS AND DISBURSEMENTS | | | | | | |
|---|---|---|---|---|---|---|
| | **Totals** | **Account (-0499)** last 4 digits of acct no. | **Account (-9735)** last 4 digits of acct no. | **Account (- )** last 4 digits of acct no. | **Account (- )** last 4 digits of acct no. | **Account (- )** last 4 digits of acct no. |
| **Beginning Cash Position (G/L Balance)** | $148,173.23 | $144,821.75 | $3,351.48 | | | |
| | | | | | | |
| **Total Cash Receipts** | $41,465.08 | $41,465.06 | $0.02 | | | |
| | | | | | | |
| **Cash Disbursements** | | | | | | |
| Plan Payments | $2,001.95 | $2,001.95 | $0.00 | | | |
| Payments to Secured Creditors (not included in Plan Payments) | | $0.00 | $0.00 | | | |
| Taxes (not included in Plan Payments) | | $0.00 | $0.00 | | | |
| Professional Fees | | $0.00 | $0.00 | | | |
| Quarterly Fees | | $0.00 | $0.00 | | | |
| Other Disbursements of Note: | | | $0.00 | | | |
| -   Wilmington Mortgage Payment | $26,601.77 | $26,601.77 | | | | |
| -   Home Mortgage | $4,553.72 | $4,553.72 | | | | |
| - | | | | | | |
| - | | | | | | |
| - | | | | | | |
| - | | | | | | |
| All Remaining Disbursements | $18,928.37 | $18,182.48 | $745.89 | | | |
| **Total Cash Disbursements** | $52,085.81 | $51,339.92 | $745.89 | | | |
| | | | | | | |

**Note: All disbursements must be listed.**

# BANK ACCOUNTS

Note: All bank statements must be attached for each account, including copies of canceled checks. Please reproduce this page and complete for each account and attach the bank statement to the corresponding page.

Name of Bank: __Truist (Formerly SunTrust)__

Type of Account: __Checking__
(i.e., operating, payroll, tax, etc.)

Account Number: __-0499__
(last 4 digits of account number)

Ending Balance (per the attached statement) __$134,946.89__

Outstanding Deposits and Other Credits (list below): __$0.00__

Outstanding Checks and Other Debits (list below): __$55.00__

Ending Reconciled Balance* __$144,766.75__

Highest Daily Balance During Period __$149,381.26__

*The sum of the ending balances of all accounts must reconcile with the Ending Cash Position on the Cash Receipts and Disbursements page.

| Outstanding Deposits / Other Credits | | |
|---|---|---|
| **Check No.** | **Payee:** | **Amount:** |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Total: | |

| Outstanding Checks / Other Debits | | |
|---|---|---|
| **Check No.** | **Payee:** | **Amount:** |
| 1314 | Sharone Mitchell | $55.00 |
| 1413 | Legolia McGlohon | $2,018.36 |
| | | |
| | | |
| | | |
| | Total: | $2,073.36 |

**HH**
**TRUIST**

500-49-01-00 55611  9 C 001 18    55 004
CALVIN  R  KENNEDY
CYNTHIA  M  KENNEDY
4324  SATTERWYTHE  LN
CHARLOTTE  NC   28215-8511

# Your account statement

For 12/28/2022

## Contact us

 Truist.com

 (844) 4TRUIST or (844) 487-8478

If you are traveling outside of the USA and have concerns about accessing your account while you are traveling, please contact your Branch Banker or call us at 844-4TRUIST.

## ■ TRUIST DIMENSION CHECKING

### Account summary

| | |
|---|---|
| Your previous balance as of 11/28/2022 | $144,821.75 |
| Checks | - 45,243.87 |
| Other withdrawals, debits and service charges | - 6,096.05 |
| Deposits, credits and interest | + 41,465.06 |
| Your new balance as of 12/28/2022 | = $134,946.89 |

### Interest summary

| | |
|---|---|
| Interest paid this statement period | $1.12 |
| 2022 interest paid year-to-date | $16.55 |
| Interest rate | 0.01% |
| Annual percentage yield (APY) earned | 0.01% |

### Checks

| DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT ($) |
|---|---|---|---|---|---|---|---|---|
| 12/21 | | 500.00 | 12/05 | 1412 | 2,001.95 | 12/15 | 1417~ | |
| 11/29 | *1407~ | | 12/06 | *1414 | 720.00 | 12/15 | 1418 | 137.64 |
| 11/29 | 1408~ | | 12/22 | 1415 | 165.00 | 12/15 | 1419 | 106.30 |
| 12/07 | *1410 | 26,601.77 | 12/15 | 1416~ | | 12/20 | *7011973 | 10,457.49 |
| 12/13 | 1411 | 4,553.72 | | | | | | |

\* indicates a skip in sequential check numbers above this item

~ indicates an electronically converted check. See "Other withdrawals, debits and service charges"

Total checks = $45,243.87

### Other withdrawals, debits and service charges

| DATE | DESCRIPTION | AMOUNT($) |
|---|---|---|
| 11/29 | DEBIT CARD PURCHASE BOJANGLES 752 0100 11-27 CHARLOTTE     NC 3417 | 9.06 |
| 11/29 | DEBIT CARD PURCHASE Prime Video*5E28G9 11-28 888-802-3080     WA 3417 | 5.44 |
| 11/29 | CONVERTED CHECK - ARC CHECK PYMT CHARTER COMMUNIC 14071407 | 9.30 |
| 11/29 | CONVERTED CHECK - ARC ARC     DUKE OR PIEDMONT 14081408 | 136.74 |
| 11/29 | VISA MONEY TRANSFER DEBIT 11-29-22 SAN JOSE     CA 4798 VENMO* | 261.90 |
| 11/30 | DEBIT CARD PURCHASE SP VOLUSPA 11-29 HTTPSVOLUSPAU CA 4798 | 133.85 |
| 12/01 | DEBIT CARD PURCHASE GAP ONLINE 11-29 800-4277895     OH 4798 | 75.08 |
| 12/01 | DEBIT CARD PURCHASE-PIN 11-30-22 CHARLOTTE     NC 3417 MECKLENBURG ABC #18 | 52.38 |
| 12/02 | DEBIT CARD PURCHASE CHICK-FIL-A #04095 11-30 HARRISBURG     NC 3417 | 6.51 |
| 12/02 | DEBIT CARD PURCHASE AMZN Mktp US*QA6N0 12-01 Amzn.com/bill  WA 3417 | 98.11 |
| 12/02 | DEBIT CARD PURCHASE-PIN 12-01-22 CHARLOTTE     NC 4798 FOOD LION #2627 | 224.27 |
| 12/05 | DEBIT CARD PURCHASE BOJANGLES 752 0100 12-01 CHARLOTTE     NC 3417 | 14.07 |
| 12/05 | DEBIT CARD PURCHASE COOK OUT NORTH TRY 12-01 CHARLOTTE     NC 3417 | 7.99 |
| 12/05 | DEBIT CARD PURCHASE COOK OUT NORTH TRY 12-02 CHARLOTTE     NC 3417 | 14.47 |
| 12/05 | DEBIT CARD PURCHASE AMZN Mktp US*U24N5 12-03 Amzn.com/bill  WA 3417 | 53.18 |
| 12/05 | DEBIT CARD PURCHASE-PIN 12-03-22 CHARLOTTE     NC 3417 WALGREENS STORE 3716-J W | 22.18 |

*continued*

| | | AMOUNT($) |
|---|---|---|
| 12/05 | DEBIT CARD PURCHASE-PIN 12-04-22 CONCORD      NC 4798 LIDL #1163 | 254.69 |
| 12/05 | DEBIT CARD PURCHASE WALGREENS #4547 12-04 CHARLOTTE    NC 4798 | 4.47 |
| 12/06 | DEBIT CARD PURCHASE BOJANGLES 752 0100 12-04 CHARLOTTE    NC 3417 | 9.06 |
| 12/06 | DEBIT CARD PURCHASE SP TWO BLIND BROTH 12-05 TWOBLINDBROTH  NY 4798 | 98.00 |
| 12/06 | DEBIT CARD PURCHASE AMZN MKTP US*SX578 12-05 AMZN.COM/BILL  WA 3417 | 50.38 |
| 12/07 | DEBIT CARD PURCHASE AMZN MKTP US*CY70J 12-06 AMZN.COM/BILL  WA 3417 | 53.08 |
| 12/07 | DEBIT CARD PURCHASE-PIN 12-06-22 CHARLOTTE    NC 3417 HARRIS TEETER #0 9641 BRO | 42.69 |
| 12/07 | DEBIT CARD PURCHASE-PIN 12-06-22 CHARLOTTE    NC 3417 BP#6462642TIMES #44 | 24.92 |
| 12/07 | DEBIT CARD PURCHASE-PIN 12-06-22 CHARLOTTE    NC 3417 HARRIS TEETER #0 9641 BRO | 19.24 |
| 12/08 | DEBIT CARD PURCHASE SP MEGAFOOD 12-07 MEGAFOOD.COM   DC 4798 | 49.32 |
| 12/09 | DEBIT CARD PURCHASE Amazon.com*778XH49 12-08 Amzn.com/bill  WA 3417 | 6.38 |
| 12/09 | DEBIT CARD PURCHASE BELK.COM 12-08 866-235-5443   NC 4798 | 64.35 |
| 12/09 | DEBIT CARD PURCHASE BISCUITVILLE 202 12-08 CONCORD      NC 3417 | 18.35 |
| 12/09 | DEBIT CARD PURCHASE GOING GOING GONE 12-08 CONCORD      NC 3417 | 448.49 |
| 12/09 | DEBIT CARD PURCHASE TARGET      0002 12-08 CONCORD    NC 4798 | 62.79 |
| 12/09 | DEBIT CARD PURCHASE MR CHARLES CHICKEN 12-08 CHARLOTTE    NC 3417 | 75.72 |
| 12/12 | DEBIT CARD PURCHASE AMZN Mktp US*QE9FC 12-08 Amzn.com/bill  WA 3417 | 60.78 |
| 12/12 | DEBIT CARD PURCHASE BEAN BOX 12-09 HTTPSBEANBOX.  WA 4798 | 42.00 |
| 12/12 | DEBIT CARD PURCHASE BLACKLION 12-09 CHARLOTTE      NC 3417 | 10.73 |
| 12/12 | DEBIT CARD PURCHASE BOJANGLES 445 12-09 CHARLOTTE    NC 3417 | 17.30 |
| 12/12 | DEBIT CARD PURCHASE AMZN Mktp US*3V5FO 12-10 Amzn.com/bill  WA 3417 | 10.71 |
| 12/12 | DEBIT CARD PURCHASE AMZN Mktp US*LY8S9 12-10 Amzn.com/bill  WA 3417 | 19.29 |
| 12/12 | DEBIT CARD PURCHASE Amazon.com*TG4QM1W 12-11 Amzn.com/bill  WA 3417 | 85.44 |
| 12/13 | DEBIT CARD PURCHASE AMZN Mktp US*Y335E 12-13 Amzn.com/bill  WA 3417 | 35.55 |
| 12/13 | DEBIT CARD PURCHASE AMZN Mktp US*3M12P 12-12 Amzn.com/bill  WA 3417 | 37.54 |
| 12/14 | DEBIT CARD PURCHASE CHICK-FIL-A #04095 12-12 HARRISBURG      NC 3417 | 44.15 |
| 12/15 | DEBIT CARD PURCHASE Amazon.com*HB81M30 12-14 Amzn.com/bill  WA 3417 | 29.78 |
| 12/15 | DEBIT CARD PURCHASE-PIN 12-14-22 CHARLOTTE    NC 3417 FOOD LION #2627 | 5.28 |
| 12/15 | DEBIT CARD PURCHASE Prime Video*HH8ME1 12-15 888-802-3080   WA 3417 | 7.62 |
| 12/15 | CONVERTED CHECK - ARC ARC      DUKE OR PIEDMONT 1416 1416 | 411.34 |
| 12/15 | CONVERTED CHECK - ARC ARC      DUKE OR PIEDMONT 1417 1417 | 212.00 |
| 12/16 | DEBIT CARD PURCHASE AMZN Mktp US*ON8JE 12-15 Amzn.com/bill  WA 3417 | 89.21 |
| 12/16 | DEBIT CARD PURCHASE SP URBAN KANGAROO 12-15 HTTPSURBANKAN  CA 4798 | 34.95 |
| 12/16 | DEBIT CARD PURCHASE Amazon.com*AH8DQ0O 12-15 Amzn.com/bill  WA 3417 | 150.00 |
| 12/16 | DEBIT CARD PURCHASE AMZN Mktp US*0T6S9 12-15 Amzn.com/bill  WA 3417 | 139.41 |
| 12/19 | DEBIT CARD PURCHASE AMZN Mktp US*5S3CO 12-16 Amzn.com/bill  WA 3417 | 53.61 |
| 12/19 | DEBIT CARD PURCHASE AMZN Mktp US*5U43X 12-16 Amzn.com/bill  WA 3417 | 32.16 |
| 12/19 | DEBIT CARD PURCHASE AMZN Mktp US*KZ0ID 12-16 Amzn.com/bill  WA 3417 | 23.60 |
| 12/19 | DEBIT CARD PURCHASE-PIN 12-16-22 CONCORD      NC 3417 WM SUPERCENTER #4574 | 304.64 |
| 12/19 | DEBIT CARD PURCHASE-PIN 12-16-22 CONCORD      NC 3417 WAL WAL-MART SUPER 002085 | 29.50 |
| 12/19 | DEBIT CARD PURCHASE Prime Video *K91CF 12-16 888-802-3080   WA 3417 | 4.28 |
| 12/19 | DEBIT CARD PURCHASE AMZN Mktp US*LS0DQ 12-18 Amzn.com/bill  WA 3417 | 42.89 |
| 12/19 | DEBIT CARD PURCHASE TARGET.COM  * 12-18 800-591-3869   MN  4798 | 18.17 |
| 12/19 | DEBIT CARD PURCHASE COOK OUT NORTH TRY 12-17 CHARLOTTE    NC 3417 | 32.97 |
| 12/20 | DEBIT CARD PURCHASE BOJANGLES 752 0100 12-18 CHARLOTTE    NC 3417 | 10.13 |
| 12/20 | DEBIT CARD PURCHASE CRAFTY CRAB RESTAU 12-18 CHARLOTTE    NC 3417 | 35.71 |
| 12/20 | DEBIT CARD PURCHASE-PIN 12-19-22 CHARLOTTE    NC 4798 TJMAXX #0153 | 214.76 |
| 12/20 | DEBIT CARD PURCHASE-PIN 12-20-22 CHARLOTTE    NC 4798 HARRIS TEETER #0 9641 BRO | 69.01 |
| 12/21 | DEBIT CARD PURCHASE AMZN Mktp US*LI6QW 12-20 Amzn.com/bill  WA 3417 | 37.53 |
| 12/21 | DEBIT CARD PURCHASE-PIN 12-20-22 CHARLOTTE    NC 4798 WAL-MART #6233 | 14.20 |
| 12/21 | DEBIT CARD PURCHASE STOCK MARKET 12-20 CONCORD      NC 3417 | 61.19 |
| 12/21 | DEBIT CARD PURCHASE-PIN 12-20-22 CONCORD      NC 3417 OLLIES BARGAIN OUTLET 096 | 200.72 |
| 12/22 | DEBIT CARD PURCHASE COOK OUT NORTH TRY 12-20 CHARLOTTE    NC 3417 | 7.99 |
| 12/22 | DEBIT CARD PURCHASE-PIN 12-21-22 CHARLOTTE    NC 3417 WALGREENS STORE 3716-J W | 11.79 |
| 12/22 | DEBIT CARD PURCHASE-PIN 12-21-22 CHARLOTTE    NC 3417 WALGREENS STORE 8538 N TR | 8.77 |
| 12/22 | DEBIT CARD PURCHASE-PIN 12-21-22 CHARLOTTE    NC 3417 MECKLENBURG ABC #18 | 52.38 |
| 12/23 | DEBIT CARD PURCHASE-PIN 12-22-22 CHARLOTTE    NC 4798 BP#6462642TIMES #44 | 41.37 |
| 12/23 | DEBIT CARD PURCHASE BEAUTY 101 12-22 CHARLOTTE      NC 4798 | 36.01 |
| 12/27 | DEBIT CARD PURCHASE CHICK-FIL-A #04095 12-22 HARRISBURG      NC 3417 | 16.88 |
| 12/27 | DEBIT CARD PURCHASE-PIN 12-23-22 CHARLOTTE    NC 3417 WALGREENS STORE 8538 N TR | 7.73 |
| 12/27 | DEBIT CARD PURCHASE WALGREENS #4547 12-23 CHARLOTTE    NC 3417 | 1.90 |
| 12/27 | DEBIT CARD PURCHASE-PIN 12-23-22 CONCORD      NC 4798 WAL-MART #4574 | 71.69 |
| 12/27 | DEBIT CARD PURCHASE-PIN 12-23-22 CHARLOTTE    NC 4798 HARRIS TEETER #0 9641 BRO | 23.82 |
| 12/27 | DEBIT CARD PURCHASE Prime Video*1838A1 12-24 888-802-3080   WA 3417 | 4.35 |

*continued*

## ■ TRUIST DIMENSION CHECKING  (continued)

| DATE | DESCRIPTION | AMOUNT($) |
|---|---|---|
| 12/27 | DEBIT CARD RECURRING PYMT CVS CarePass 12-24 800-746-7287   RI 3417 | 5.00 |
| 12/27 | DEBIT CARD RECURRING PYMT HLU*Hulu 150391180 12-26 HULU.COM/BILL   CA 3417 | 80.24 |
| 12/27 | DEBIT CARD PURCHASE-PIN 12-26-22 CHARLOTTE    NC 3417 HARRIS TEETER #0 9641 BRO | 12.23 |
| 12/27 | DEBIT CARD PURCHASE WPY*RunnerSpace PL 12-27 844-577-8663    OR 3417 | 12.99 |
| 12/27 | DEBIT CARD PURCHASE-PIN 12-26-22 CHARLOTTE    NC 4798 WAL SAM'S CLUB    000847 | 432.15 |
| 12/28 | DEBIT CARD PURCHASE BOJANGLES 752 0100 12-26 CHARLOTTE    NC 3417 | 10.67 |
| 12/28 | DEBIT CARD PURCHASE CHICK-FIL-A #04095 12-26 HARRISBURG    NC 3417 | 8.44 |
| 12/28 | DEBIT CARD PURCHASE-PIN 12-27-22 CHARLOTTE    NC 4798 HOBBYLOBBY 8150 IKEA BLVD | 145.83 |
| 12/28 | DEBIT CARD PURCHASE-PIN 12-27-22 CHARLOTTE    NC 4798 TJMAXX #0153 | 33.76 |
| 12/28 | DEBIT CARD PURCHASE TJMAXX #0153 12-27 CHARLOTTE    NC 4798 | 8.57 |
| 12/28 | DEBIT CARD PURCHASE-PIN 12-27-22 CHARLOTTE    NC 4798 BURLINGTON STORES 985 | 26.88 |

Total other withdrawals, debits and service charges                   = $6,096.05

### Deposits, credits and interest

| DATE | DESCRIPTION | AMOUNT($) |
|---|---|---|
| 12/01 | PENSIONPMT TRUIST BANK XXXX KENNEDY, CALVIN | 1,101.46 |
| 12/01 | XXVA BENEF VACP TREAS 310 3600 CALVIN KENNEDY | 1,168.77 |
| 12/05 | DEBIT CARD RETURN AMZN Mktp US 12-03 Amzn.com/bill    WA 3417 | 10.71 |
| 12/12 | DEPOSIT | 34,255.00 |
| 12/14 | XXSOC SEC SSA TREAS 310 ASSA CALVIN R KENNEDY | 3,054.00 |
| 12/21 | DEPOSIT | 500.00 |
| 12/21 | XXSOC SEC SSA TREAS 310 ASSA CYNTHIA M KENNEDY | 1,374.00 |
| 12/28 | INTEREST PAYMENT | 1.12 |

Total deposits, credits and interest                   = $41,465.06

---

**All Truist Consumer Deposit Accounts**

**Changes are being made effective December 5, 2022** to the Bank Services Agreement ("BSA") that governs your account, including changes to the Electronic Funds Transfer Agreement as shown below. Continued use of your account after the effective date constitutes your acceptance of the changes. The most current version of the BSA can be obtained at any Truist branch or online at www.truist.com. All future transactions on your account will be governed by the amended BSA. If you have any questions about this change, contact your local Truist branch, your relationship manager, or call 844-4TRUIST (844-487-8478).

6A: PARTIAL AUTHORIZATION FOR CARD TRANSACTIONS:  If a Card purchase amount exceeds the current Available balance in the primary linked checking or savings account when you are making a purchase, you may be able to use your Available balance to pay for a portion of the total purchase.  The transaction will be subject to your card s daily spending limit.  We will first try to approve the full amount of the purchase with the Available balance in your primary account, accounts linked for Overdraft Protection, and, $100 Negative Balance Buffer for those eligible accounts. If we do not approve the full amount of the purchase, we may approve a portion of the purchase using the remaining available funds in your linked account.  This is called "partial authorization."  The remaining amount of the purchase total would need to be covered by another form of payment, such as cash or another card.  If you are unable/unwilling to provide an additional form of payment, the partial authorization will be reversed by the merchant.  Not all merchants are able to accept partial authorizations or process transactions using multiple forms of payment.

---

**All Truist Consumer Deposit Accounts**

Changes are being made effective February 3, 2023 to the Bank Services Agreement ("BSA") that governs your account, including revisions to the paragraph titled "Duty to Review Account Statement". Continued use of your account after the effective date constitutes your acceptance of the changes. The most current version of the BSA can be obtained at any Truist branch or online at www.truist.com. All future transactions on your account will be governed by the amended BSA. If you have any questions about this change, contact your local Truist branch, your relationship manager, or call 844-4TRUIST (844-487-8478).

---

**Truist formerly SunTrust Consumer Deposit Accounts Only**

Truist provides a summary on Consumer checking and savings account statements containing Overdraft Related Fees* charged for the current statement cycle as well as a Year To Date (YTD) accumulation. Due to the Truist system conversion, for accounts that were

your Truist statement does not include any Overdraft Related Fees* this account may have been charged from January 1, 2022 through February 21, 2022. The total of the YTD Overdraft Related Fees can be determined by adding the YTD Overdraft Related Fees from your SunTrust statement dated February 21, 2022 and your Truist statement dated December 2022.

If you would like information about fees incurred prior to February 22, 2022 you can view previous statements, visit a local branch or call 1-844-4TRUIST (844-487-8478).

*Overdraft Related Fees for accounts that were opened at SunTrust were: Overdraft Fee, Returned Item Fee and Extended Overdraft Fee
Overdraft Related Fees for Truist are: Overdraft Fee, Returned Item Fee and Negative Account Balance Fee. As of April 25, 2022, Truist no longer charges the Returned Item Fee and Negative Account Balance Fee for Retail (Consumer) clients.

---

**All Truist Consumer Deposit Accounts**

Changes were made effective November 15, 2022 to the Personal Deposit Accounts Fee Schedule (PDFS) which applies to your account. The following changes were made to correct and clarify the fees assessed for Duplicate Statements and Statement Reprints.

¡   A Duplicate Statement Fee of $3.00 per month applies when you request delivery of an additional current statement mailed each statement cycle.
¡   A Statement Reprint Fee of $5.00 per copy applies when you request an additional copy of a statement after receiving the original.

Continued use of your account after the effective date constitutes your acceptance of the changes. The most current version of the PDFS can be obtained at any Truist branch or online at www.truist.com. All future transactions on your account will be governed by the amended PDFS. If you have any questions about this change, contact your local Truist branch, your relationship manager, or call 844-4TRUIST (844-487-8478).

# Questions, comments or errors?

For general questions/comments or to report errors about your statement or account, please call us at 1-844-4TRUIST (1-844-487-8478) 24 hours a day, 7 days a week.  Truist Contact Center teammates are available to assist you from 8 am 8pm EST Monday-Friday and 8am  5pm EST on Saturday.  You may also contact your local Truist branch.  To locate a Truist branch in your area, please visit Truist.com.

**Electronic fund transfers (For Consumer Accounts Only.  Commercial Accounts refer to t he Commercial Bank Services Agreement.)**
Services such as Bill Payments and Zelle® are subject to the terms and conditions governing those services, which may not provide an error resolution process in all cases. Please refer to the terms and conditions for those services.

In case of errors or questi ons about your electronic fund transfers, if you think your statement or receipt i s wrong or if you need more information about a transfer on the statement or receipt, IMMEDIATELY call 1-844-487-8478 or write to:

> Fraud Management
> P.O. Box 1014
> Charlotte, NC 28201

Tell us as soon as you can, if you think your statement or receipt is wrong, or i f you need more information about a transfer listed on the statement or receipt.  We must hear from you no later than sixty (60) days after we sent the FIRST statement on w hich the problem or error appeared.
*   Tell us your name and deposit account number (if any)
*   Describe the error or transfer you are unsure of, and explain as clearly as you can why you believe it is an error or w hy you need more information
*   Tell us the dollar amount of the suspected error
If you tell us orally, we may require that you also send us your complaint or question in writing within ten (10) business days.  We will tell you the results of our investigation within ten (10) business days after we hear from you, and we will correct any error promptl y. If we need more time, however, we may take up to forty-fi ve (45) days to investigate your complaint or questions for ATM transactions made within the United States and up to ninety (90 ) days for new accounts, foreign i niti ated transactions and point-of-sale transactions. If we decide to do t his, we will re-credit your account within ten (10) business days for the amount you think is in error, minus a maximum of $50. If we ask you to put your complaint in writing, and we do not receive it within ten (10) business days, we may not re-credit your account and you will not have use of the money during the ti me it takes us to complete our investigation.

Tell us AT ONCE if you believe your access device has been lost or stolen, or someone may have electronically transferred money from your account without your permission, or someone has used informati on from a check to conduct an unauthorized electronic fund transfer. If you tell us within two (2) business days after you l earn of the loss or theft of your access device or the unauthorized transaction, you can lose no mo re th an $50 if someone makes electronic transfers without your permission.

If you do NOT tell us within two (2) business days after you learn of the loss or theft of your access device or the unauthorized transaction, and we can prove we could

have stopped someone from making electronic transfers without your permission if you had told us, you could lose as much as $500. Also, if your periodic statement shows transfers you did not make, tell us at once. If you do not tell us within sixty (60) days after the statement was mailed to you, you may not get back any money you lost after sixty (60) days if we can prove we could have stopped someone from taking the money if you had told us in time.

**Important information about your Truist Ready Now Credit Line Account**
Once advances are made from your Truist Ready Now Credit Line Account, an INTEREST CHARGE will automatically be imposed on the account's outstanding "Average daily balance." The **INTEREST CHARGE** is calculated by applying the "Daily periodic rate" to the 'Average daily balance" of your account (including current transactions) and multiplying this figure by the number of days in the billing cycle.  To get the "Average daily balance," we take the beginning account balance each day, add any new advances or debits, and subtract any payments or credits and the last unpaid **INTEREST CHARGE**.  This gives us the daily balance.  Then we add all of the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.  This gives us the 'Average daily balance."

**Billing Rights Summary**
**In case of errors or questions about your Truist Ready Now Credit Line statement**
If you think your statement is incorrect, or if you need more information about a Truist Ready Now Credit Line transaction on your statement, please call 1-844-4TRUIST or visit your local Truist branch.  To dispute a payment, please write to us on a separate sheet of paper at the following address:

> Card and Direct to Consumer Lending
> PO Box 200
> Wilson NC  27894-0200

We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the error or problem appeared.  You may telephone us, but doing so will not preserve your rights.  In your letter, please provide the following information:
*   Your name and account number
*   Describe the error or transfer you are unsure about, and explain in detail why you believe this is an error or why you need more information
*   The dollar amount of the suspected error
During our investigation process, you are not responsible for paying any amount in question;  you are, however, obligated to pay the items on your statement that are not in question.  While we investigate your question, we cannot report you as delinquent or take any action to collect the amount in question.

**Mail-in deposits**
If you wish to mail a deposit, please send a deposit ticket and check to your local Truist branch.  Visit Truist.com to locate the Truist branch closest to you. Please do not send cash.

**Change of address**
If you need to change your address, please visit your local Truist branch or call Truist Contact Center at 1-844-4TRUIST (1-844-487-8478).

| How to Reconcile Your Account | | Outstanding Checks and Other Debits (Section A) | | | |
|---|---|---|---|---|---|
| | | Date/Check # | Amount | Date/Check # | Amount |
| 1. List the new balance of your account from your latest statement here: | | | | | |
| 2. Record any outstanding debits (checks, check card purchases, ATM withdrawals, electronic transactions, etc.) in section A. Record the transaction date, the check number or type of debit and the debit amount. Add up all of the debits, and enter the sum here: | | | | | |
| 3. Subtract the amount in Line 2 above from the amount in Line 1 above and enter the t otal here: | | | | | |
| 4. Record any outstanding credits in section B.  Record the transaction date, credit type and the credit amount.  Add up all of the credits and enter the sum here: | | Outstanding Deposits and Other Credits (Section B) | | | |
| | | Date/Type | Amount | Date/Type | Amount |
| 5. Add the amount in Line 4 to the amount in Line 3 to find your balance.  Enter the sum here.  This amount should match the balance in your register. | | | | | |

For more information, please contact your local Truist branch, visit Truist.com or contact us at 1-844-4TRUIST (1-844-487-8478).  MEMBER FDIC

CHECK#:0              $500.00

CHECK#:1410          $26,601.77



CHECK#:1411          $4,553.72

CHECK#:1412          $2,001.95



CHECK#:1414          $720.00



For Deposit Only
H & H Pool & Spa Service
5011:1169:0604:08562

BOFD RT# 053111690
CORPNC\MHARTSELL, 12/22/2022, 13:15:51
BATCH ID 47739, TMID 164593562247739

CHECK#:1415          $165.00

CREDIT ACCT OF NAMED PAYEE xxxxxxxx9813-9
ENDORSEMENT GUARANTEED BY TRUST CHARLOTTE NC
>053131521< 00392383390257279 00013764 180

CHECK#:1418          $137.64

>053104869<
Peoples Bank #011
2022-12-19
0011154841
Batch 352632081

CHECK#:1419          $106.30
CHECK#:7011973       $10,457.49

# BANK ACCOUNTS

Note: All bank statements must be attached for each account, including copies of canceled checks. Please reproduce this page and complete for each account and attach the bank statement to the corresponding page.

Name of Bank: **Wells Fargo**

Type of Account: **Checking**
(i.e., operating, payroll, tax, etc.)

Account Number: **-9735**
(last 4 digits of account number)

Ending Balance (per the attached statement)                              $2,605.61

Outstanding Deposits and Other Credits (list below):                     $0.00

Outstanding Checks and Other Debits (list below):                        $0.00

Ending Reconciled Balance: *                                             $2,605.61

Highest Daily Balance During Period                                      $3,351.48

*The sum of the ending balances of all accounts must reconcile with the Ending Cash Position on the Cash Receipts and Disbursements page.

| Outstanding Deposits / Other Credits | | | | Outstanding Checks / Other Debits | | |
|---|---|---|---|---|---|---|
| Check No. | Payee: | Amount: | | Check No. | Payee: | Amount: |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | Total: | | | | Total: | |

# Wells Fargo® Preferred Checking



December 15, 2022  ■  Page 1 of 5

CYNTHIA M KENNEDY
4324 SATTERWYTHE LN
CHARLOTTE NC 28215-8511

## Questions?

*Available by phone Mon-Sat 7:00am-11:00pm Eastern Time, Sun 9:00am-10:00pm Eastern Time:*
We accept all relay calls, including 711
**1-800-742-4932**

*En español:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (338)
P.O. Box 6995
Portland, OR  97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s).  Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.*

| | | | |
|---|---|---|---|
| Online Banking | ✓ | Direct Deposit | ☐ |
| Online Bill Pay | ✓ | Auto Transfer/Payment | ☐ |
| Online Statements | ✓ | Overdraft Protection | ☐ |
| Mobile Banking | ✓ | Debit Card | ✓ |
| My Spending Report | ✓ | Overdraft Service | ☐ |

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 11/17 | $3,351.48 |
| Deposits/Additions | 0.02 |
| Withdrawals/Subtractions | - 745.89 |
| **Ending balance on 12/15** | **$2,605.61** |

Account number:

**CYNTHIA M KENNEDY**

*North Carolina account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  053000219

**Overdraft Protection**

This account is not currently covered by Overdraft Protection.  If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo branch.



## Interest summary

| | |
|---|---|
| Interest paid this statement | $0.02 |
| Average collected balance | $3,080.05 |
| Annual percentage yield earned | 0.01% |
| Interest earned this statement period | $0.02 |
| Interest paid this year | $0.29 |

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 11/17 | | Purchase authorized on 11/17 Williams-Sonoma 0843 6 Charlotte NC P000000784051261 Card 0693 | | 67.46 | 3,284.02 |
| 11/18 | | Purchase authorized on 11/17 Bricktop's Charlot Charlotte NC S382321660474961 Card 0693 | | 76.64 | 3,207.38 |
| 11/21 | | Purchase authorized on 11/19 Food Lion #2627 2935 W Charlotte NC P000000683077924 Card 0693 | | 96.39 | 3,110.99 |
| 12/13 | | Purchase authorized on 12/13 Sam's Club Charlotte NC P000000570174144 Card 0693 | | 299.11 | |
| 12/13 | | Purchase authorized on 12/13 Ross Store #2317 Charlotte NC P000000480891313 Card 0693 | | 49.30 | 2,762.58 |
| 12/14 | | Purchase authorized on 12/13 Bargain Hunt Charlotte NC S382347709334288 Card 0693 | | 156.99 | 2,605.59 |
| 12/15 | | Interest Payment | 0.02 | | 2,605.61 |
| **Ending balance  on 12/15** | | | | | **2,605.61** |
| **Totals** | | | **$0.02** | **$745.89** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted.  If you had insufficient available funds when a transaction posted, fees may have been assessed.*



# IMPORTANT ACCOUNT INFORMATION

**ATM Check Deposit Limit**

Effective March 15, 2023, we are changing the following paragraph in the "Our right to decline deposits" subsection within the "Depositing Funds" section of the Deposit Account Agreement:

**We may decline all or part of a deposit, including cash, for any reason.**     This could happen, for example, if a payee isn't a co-owner, authorized signer, or authorized representative on your account, we can't verify an endorsement, the check was issued from a credit account, the dollar amount of the deposit, the check looks suspicious, or it's a non-U.S. item. If we decline a deposit that you mailed to us, we may return it to you at your cost (including charging you for postage and handling to return foreign currency coin or paper), or retain any invalid checks or other documents included in the deposit without crediting your account, at our discretion.

The new paragraph is as follows:

**We may decline all or part of a deposit, including cash, for any reason.**     This could happen, for example, if a payee isn't a co-owner, authorized signer, or authorized representative on your account, we can't verify an endorsement, the check was issued from a credit

December 15, 2022 ■ Page 3 of 5



account, the dollar amount of the deposit, the check looks suspicious, or it's a non-U.S. item. If we decline a deposit that you mailed to us, we may return it to you at your cost (including charging you for postage and handling to return foreign currency coin or paper), or retain any invalid checks or other documents included in the deposit without crediting your account, at our discretion. There are limits on the total dollar amount of checks that can be deposited at Wells Fargo ATMs per transaction. We may decline check deposits that exceed $1 million.

———————————

Effective January 31, 2023, in the section of your Deposit Account Agreement ("Agreement") titled "Available Balance, Posting Transactions, and Overdraft", under the subsection "How we process and post transactions to your account", the section titled "Step 2: we sort your transactions into categories" is deleted and replaced with the following:

Step 2: we sort your transactions into categories

- We credit deposits received before the cutoff time.

- We subtract withdrawals and payments we have previously authorized that we cannot return unpaid such as debit card purchases, ATM withdrawals, account transfers, Bill Pay transactions, and teller-cashed checks. Transactions are generally sorted by date and time the transaction was conducted or, for some transactions, the day we receive it for payment, or the time assigned by our system. If date and time are the same, we post from lowest to highest dollar amount.

- We pay your checks and preauthorized ACH payments, such as electronic payments you have authorized a company to withdraw using your account and routing number. Transactions are generally sorted by date and time received by the Bank, and if date and time are the same, we post from lowest to highest dollar amount. Merchant-issued payment card transactions (e.g., an ACH payment associated with a purchase you made using a store-issued debit card) post after all other transactions in this category.

Determining Date and Time

- Cutoff time is based on the location where the deposit or transfer was made.

- For debit card transactions, if we do not have date and time information, we use the day we receive it for payment from the merchant.

- For some transactions, such as Bill Pay or teller-cashed checks, a different time may be assigned by our systems.

———————————

NEW YORK CITY CUSTOMERS ONLY -- Pursuant to New York City regulations, we request that you contact us at 1-800-TO WELLS (1-800-869-3557) to share your language preference.

———————————

**Tax Season Reminder:**  Wells Fargo delivers tax documents - either by mail or online depending on your delivery preference - no later than January 31 or by the IRS deadline of February 15 for brokerage accounts. Depending on the U.S. Postal delivery service, you should expect to receive your tax documents no later than the end of February. You can update your tax document delivery preferences by visiting Wells Fargo Online®.

The Internal Revenue Service (IRS) requires Wells Fargo to report information regarding the amount of interest, dividend or miscellaneous income earned as well as gross proceeds from sales by providing you with various IRS Forms 1099 based on the different types of transactions that occurred in your account during the calendar tax year (the IRS reportable threshold). For example, if you have interest or dividends in the amount of $10 or more during that timeframe, you will receive a Form 1099-INT from Wells Fargo.

For more information, visit Wells Fargo Tax Center at https://www.wellsfargo.com/tax-center/.

———————————

**Can we reach you when it's really important?**

December 15, 2022    ■    Page 4 of 5

**WELLS
FARGO**

Don't miss suspicious-activity alerts and critical account information. Please make sure your contact information is current by:
- Signing on to wellsfargo.com or the Wells Fargo Mobile® app and navigating to the Update Contact Information page via My Profile
- Contacting the phone number at the top of your statement
- Visiting a branch

_____

**Other Wells Fargo Benefits**

Shopping online this Holiday Season? Avoid scams by watching for red flags like pressure to buy right away, rude or pushy language, or unusually specific ways to pay such as gift cards, crypto or payment apps. Learn more at www.wellsfargo.com/security.

_____

**Other Wells Fargo Benefits**

**Help take control of your finances with a Wells Fargo personal loan.**
Whether it's managing debt, making a large purchase, improving your home, or paying for unexpected expenses, a personal loan may be able to help. See personalized rates and payments in minutes with no impact to your credit score.
**Get started at wellsfargo.com/personalloan.**

December 15, 2022   ■  Page 5 of 5

**WELLS FARGO**

---

## Worksheet to balance your account

Follow the steps below to reconcile your statement balance with your account register balance.  Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

**A**  **Enter the ending balance**  on this statement.  $ _____

**B**  **List outstanding deposits and other credits** to your account that do not appear on this statement.  **Enter the total** in the column to the right.

| Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **Total** $ | |

+ $ _____

**C**  **Add** **A** and **B** to calculate the subtotal.  = $ _____

**D**  **List outstanding checks, withdrawals, and other debits** to your account that do not appear on this statement.  **Enter the total** in the column to the right.

| Number/Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **Total** | |

- $ _____

**E**  **Subtract** **D** from **C** to calculate the adjusted ending balance.  This amount should be the same as the current balance shown in your register.  = $ _____

---

## Important Information You Should Know

■  **To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts:**
Wells Fargo Bank, N.A. may furnish information about deposit accounts to consumer reporting agencies. You have the right to dispute the accuracy of information that we have furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058.  Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation.  If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

■  **If your account has a negative balance:**
Please note that an account overdraft that is not resolved 60 days from the date the account first became overdrawn will result in closure and charge off of your account. In this event, it is important that you make arrangements to redirect recurring deposits and payments to another account. The closure will be reported to Early Warning Services. We reserve the right to close and/or charge-off your account at an earlier date, as permitted by law. The laws of some states require us to inform you that this communication is an attempt to collect a debt and that any information obtained will be used for that purpose.

■  **In case of errors or questions about your electronic transfers:**
Telephone us at the number printed on the front of this statement or write us at Wells Fargo Bank, P.O. Box 6995, Portland, OR 97228-6995 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

■  **In case of errors or questions about other transactions (that are not electronic transfers):**
Promptly review your account statement within 30 days after we made it available to you, and notify us of any errors.

©2021 Wells Fargo Bank, N.A. All rights reserved.Member FDIC. NMLSR ID 399801



## **PAYMENTS PURSUANT TO PLAN**

☐ This form is not applicable to the Debtor.

Class Essendant   Creditor(s) in this Class: Essendant

(a) Date payments commence to this Class:    February 1, 2022

(b) Status of payments: ☒ No payments due  ☐ Collateral sold/surrendered

☐ Paid in full  ☐ Treatment pursuant to plan  ☐ No claims in class  ☐ Third-party obligation

☐ Other:

(c) Payments are    ☐ Monthly    ☐ Quarterly    ☒ Other (describe): $35,000 in February 2022,
$50,000 in February 2023, $50,000 in August 2023, $165,000 in February 2024

(d) Total amount required to be paid this Reporting Period:  $0.00

(e) Total amount paid this Reporting Period:    $0.00

(f) Is the Debtor in compliance with the Plan with regard to this Class?    ☒ Yes ☐ No

(g) If the Debtor has not made all required payments, please provide specific details regarding the
number of payments missed and when the Debtor intends to bring the payments current:


[*Note: Please reproduce this section and complete for each class pursuant to the confirmed plan.*]


Class Griffith and McGlohon Creditor(s) in this Class:Griffith and McGlohon

(a) Date payments commence to this Class: March 1, 2022

(b) Status of payments: ☐ No payments due  ☐ Collateral sold/surrendered

☐ Paid in full  ☒ Treatment pursuant to plan  ☐ No claims in class  ☐ Third-party obligation

☐ Other:

(c) Payments are    ☒ Monthly    ☐ Quarterly    ☐ Other (describe):

(d) Total amount required to be paid this Reporting Period:  $4,020.31

(e) Total amount paid this Reporting Period:    $4,020.31

(f) Is the Debtor in compliance with the Plan with regard to this Class?    ☒ Yes ☐ No

(g) If the Debtor has not made all required payments, please provide specific details regarding the
number of payments missed and when the Debtor intends to bring the payments current:

## **PAYMENTS TO UNCLASSIFIED CLAIMANTS**

☐ This form is not applicable to the Debtor.

Type of Claimant:  Adminstrative

(a) Date payments commence to this Class:    TBD

(b) Status of payments: ☐ No payments due  ☐ Collateral sold/surrendered

☐ Paid in full  ☐ Treatment pursuant to plan  ☐ No claims in class  ☐ Third-party obligation

☒ Other:  TBD

(c) Payments are   ☐ Monthly   ☐ Quarterly   ☒ Other (describe): TBD

(d) Total amount required to be paid this Reporting Period:  $0.00

(e) Total amount paid this Reporting Period:    $0.00

(f) Is the Debtor in compliance with the Plan with regard to this Class?    ☒ Yes ☐ No

(g) If the Debtor has not made all required payments, please provide specific details regarding the number of payments missed and when the Debtor intends to bring the payments current:


[*Note: Please reproduce this section and complete for each class pursuant to the confirmed plan.*]


Type of Claimant:  General unsecured

(a) Date payments commence to this Class:    TBD

(b) Status of payments: ☒ No payments due  ☐ Collateral sold/surrendered

☐ Paid in full  ☐ Treatment pursuant to plan  ☐ No claims in class  ☐ Third-party obligation

☐ Other:

(c) Payments are   ☐ Monthly   ☐ Quarterly   ☒ Other (describe): TBD

(d) Total amount required to be paid this Reporting Period:  $0.00

(e) Total amount paid this Reporting Period:    $0.00

(f) Is the Debtor in compliance with the Plan with regard to this Class?    ☒ Yes ☐ No

(g) If the Debtor has not made all required payments, please provide specific details regarding the number of payments missed and when the Debtor intends to bring the payments current:

## **PROPERTY SALE REPORT**

(a) Does the plan propose the sale or transfer of property?      ☒ Yes      ☐ No

(b) If Yes, please complete one or both of the following charts:

| Description of Property to be Sold: | Deadline for Sale of Property: | Proposed Closing Date: |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
| Enter any content that you want to repeat, including other content controls. You can also insert this control around table rows in order to repeat parts of a table. |  |  |

(c) If the Debtor sold property during the reporting period, please complete the following chart:

| Description of Property Sold: | Date Property Sold: | Gross Sale Proceeds: | Net Sale Proceeds Paid to Debtor: |
|---|---|---|---|
| Iredell County Real Estate | 12/29/2022 | $18,000.34 | 15,364.34 |
|  |  |  |  |
|  |  |  |  |

[end of report]

**OFFER TO PURCHASE AND CONTRACT—VACANT LOT/LAND**
**[Consult "Guidelines" (Form 12G) for guidance in completing this form]**

> **NOTE:** If seller is selling less than the entire parcel of land owned, then compliance with subdivision regulation and/or an adequate legal description of the land being sold must be considered. This contract should not be used to sell property by reference to, exhibition of, or any other use of a plat showing a subdivision of the property before the plat has been properly approved and recorded with the register of deeds as of the date of the contract. If a preliminary plat has been approved, this contract may be used if an addendum drafted by a North Carolina real estate attorney addressing certain statutory requirements is attached. See NC General Statutes Section 160D-807 for more details and possible exceptions. If Buyer is contemplating a subdivision of the land as a condition of purchase, Buyer should first consult with an NC real estate attorney.

> **NOTE FOR NEW CONSTRUCTION:** If Seller is Buyer's builder or has engaged a builder and the sale involves the construction of a new single-family dwelling prior to closing, use the standard Offer to Purchase and Contract—New Construction (Form 800-T) or, if the construction is completed, use the Offer to Purchase and Contract (Form 2-T) with the New Construction Addendum (Form 2A3-T).

For valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Buyer offers to purchase and Seller upon acceptance agrees to sell and convey the Property on the terms and conditions of this Offer To Purchase and Contract and any addendum or modification made in accordance with its terms (together the "Contract").

1. **TERMS AND DEFINITIONS**: The terms listed below shall have the respective meaning given them as set forth adjacent to each term.

   (a) "**Seller**": __Calvin R Kennedy, Cynthia Kennedy__

   (b) "**Buyer**": __Ceila Caballero__

   (c) "**Property**": The Property shall include all that real estate described below together with all appurtenances thereto including the improvements located thereon.

   The Property ☐ will ☑ will not include a manufactured (mobile) home(s). (If a manufactured home(s) is included, Buyer and Seller should include the Manufactured (Mobile) Home provision in the Additional Provisions Addendum (Standard Form 2A11-T) with this offer.)

   Street Address: __174 Jasmine Cir #36__
   City: __Troutman__                                          Zip: __28166__
   County: __Iredell_____, North Carolina

   > **NOTE:** Governmental authority over taxes, zoning, school districts, utilities and mail delivery may differ from address shown.

   Legal Description: (Complete *ALL* applicable)
   Plat Reference: Lot/Unit_____, Block/Section _____, Subdivision/Condominium __King Acres_____
   _____, as shown on Plat Book/Slide _____ at Page(s) _____
   The PIN/PID or other identification number of the Property is: __4649-29-1003.000_____
   Other description: __L36 KING AC S-2 PB 12-58_____
   Some or all of the Property may be described in Deed Book __644_____ at Page __267_____

   (d) "**Purchase Price**":
   $ __18,000.00_____          paid in U.S. Dollars upon the following terms:
   $ __500.00_____             BY DUE DILIGENCE FEE made payable and delivered to Seller by the Effective Date by ☐ cash ☑ personal check ☑ official bank check ☑ wire transfer ☐ electronic transfer (*specify payment service*: _____)
   $ __500.00_____             BY INITIAL EARNEST MONEY DEPOSIT made payable and delivered to Escrow Agent named in Paragraph 1(f) by ☐ cash ☑ personal check ☑ official bank check ☑ wire transfer, ☐ electronic transfer within five (5) days of the Effective Date of this Contract.

Page 1 of 13

This form jointly approved by:
North Carolina Bar Association's Real Property Section
North Carolina Association of REALTORS®, Inc.



STANDARD FORM 12-T
Revised 7/2022
© 7/2022

Buyer initials _CC_____ _____   Seller initials _____ 

Created by Carmen Brooks with SkySlope® Forms

$ _____    ADDITIONAL EARNEST MONEY DEPOSIT made payable and delivered to
Escrow Agent named in Paragraph 1(f) no later than 5 p.m. on _____,
***TIME BEING OF THE ESSENCE*** by ❑ cash ❑ official bank check ❑ wire transfer
❑ electronic transfer

$ _____    BY ASSUMPTION of the unpaid principal balance and all obligations of Seller on the
existing loan(s) secured by a deed of trust on the Property in accordance with the
attached Loan Assumption Addendum (Standard Form 2A6-T).

$ _____    BY SELLER FINANCING in accordance with the attached Seller Financing
Addendum (Standard Form 2A5-T).

$ _17,000.00_____    BALANCE of the Purchase Price in cash at Settlement (some or all of which may be
paid with the proceeds of a new loan)

> **NOTE:** If the parties agree that Buyer will pay any fee or deposit described above by electronic or wire transfer, Seller agrees to cooperate in effecting such transfer, including the establishment of any necessary account and providing any necessary information to Buyer, provided, however, Buyer shall be responsible for additional costs, if any, associated with such transfer.

Should Buyer fail to deliver either the Due Diligence Fee or any Initial Earnest Money Deposit by their due dates, or should any check or other funds paid by Buyer be dishonored, for any reason, by the institution upon which the payment is drawn, Buyer shall have one (1) banking day after written notice to deliver cash, official bank check, wire transfer or electronic transfer to the payee. In the event Buyer does not timely deliver the required funds, Seller shall have the right to terminate this Contract upon written notice to Buyer, and Seller shall be entitled to recover the Due Diligence Fee together with all Earnest Money Deposit paid or to be paid in the future. In addition, Seller may be entitled to recover reasonable attorney fees and court costs. See paragraph 20 for a party's right to attorneys' fees incurred in collecting the Earnest Money Deposit or Due Diligence Fee.

(e) "**Earnest Money Deposit**": The Initial Earnest Money Deposit, the Additional Earnest Money Deposit and any other earnest monies paid or required to be paid in connection with this transaction, collectively the "Earnest Money Deposit", shall be deposited promptly and held in escrow by Escrow Agent until Closing, at which time it will be credited to Buyer, or until this Contract is otherwise terminated. In the event: (1) this offer is not accepted; or (2) a condition of any resulting contract is not satisfied, then the Earnest Money Deposit shall be refunded to Buyer. See paragraph 21 for a party's right to the Earnest Money Deposit, and attorneys' fees incurred in collecting the Earnest Money Deposit, in the event of breach of this Contract by the other party.

(f) "**Escrow Agent**" (insert name): **Alan Carpenter** _____
Buyer and Seller consent to disclosure by the Escrow Agent of any material facts pertaining to the Earnest Money Deposit to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

> **NOTE:** In the event of a dispute between Seller and Buyer over the disposition of the Earnest Money Deposit held in escrow, a licensed real estate broker ("Broker") is required by state law (and Escrow Agent, if not a Broker, hereby agrees) to retain the Earnest Money Deposit in the Escrow Agent's trust or escrow account until Escrow Agent has obtained a written release from the parties consenting to its disposition or until disbursement is ordered by a court of competent jurisdiction. Alternatively, if a Broker or an attorney licensed to practice law in North Carolina ("Attorney") is holding the Earnest Money Deposit, the Broker or Attorney may deposit the disputed monies with the appropriate clerk of court in accordance with the provisions of N.C.G.S. §93A-12.

THE PARTIES AGREE THAT A REAL ESTATE BROKERAGE FIRM ACTING AS ESCROW AGENT MAY PLACE THE EARNEST MONEY DEPOSIT IN AN INTEREST BEARING TRUST ACCOUNT AND THAT ANY INTEREST EARNED THEREON SHALL BE DISBURSED TO THE ESCROW AGENT MONTHLY IN CONSIDERATION OF THE EXPENSES INCURRED BY MAINTAINING SUCH ACCOUNT AND RECORDS ASSOCIATED THEREWITH.

(g) "**Effective Date**": The date that: (1) the last one of Buyer and Seller has signed or initialed this offer or the final counteroffer, if any, and (2) such signing or initialing is communicated to the party making the offer or counteroffer, as the case may be. The parties acknowledge and agree that the initials lines at the bottom of each page of this Contract are merely evidence of their having reviewed the terms of each page, and that the complete execution of such initials lines shall not be a condition of the effectiveness of this Agreement.

(h) "**Due Diligence**": Buyer's opportunity to investigate the Property and the transaction contemplated by this Contract, including but not necessarily limited to the matters described in Paragraph 2 below, to decide whether Buyer, in Buyer's sole discretion, will proceed with or terminate the transaction.

(i) "**Due Diligence Fee**": A negotiated amount, if any, paid by Buyer to Seller with this Contract for Buyer's right to terminate the Contract for any reason or no reason during the Due Diligence Period. It shall be the property of Seller upon the Effective Date and shall be a credit to Buyer at Closing. The Due Diligence Fee shall be non-refundable except in the event of a material breach of this

Buyer initials _CC_____ _____    Seller initials __CK_ _CK____

**STANDARD FORM 12-T**
Revised 7/2022
© 7/2022

DigiSign Verified: 24eb4693-ddf8-4cb5-a3ad-a133f938fee2

Contract by Seller, or if this Contract is terminated under Paragraph 1(b), or as otherwise provided in any addendum hereto. Buyer and Seller each expressly waive any right that they may have to deny the right to conduct Due Diligence or to assert any defense as to the enforceability of this Contract based on the absence or alleged insufficiency of any Due Diligence Fee, it being the intent of the parties to create a legally binding contract for the purchase and sale of the Property without regard to the existence or amount of any Due Diligence Fee. See paragraph 21 for a party's right to attorneys' fees incurred in collecting the Due Diligence Fee.

(j) "**Due Diligence Period**": The period beginning on the Effective Date and extending through 5:00 p.m. on _____
_12/15/2022_____*TIME BEING OF THE ESSENCE.*

(k) "**Settlement**": The proper execution and delivery to the closing attorney of all documents necessary to complete the transaction contemplated by this Contract, including the deed, settlement statement, deed of trust and other loan or conveyance documents, and the closing attorney's receipt of all funds necessary to complete such transaction

(l) "**Settlement Date:**" The parties agree that Settlement will take place on _12/29/2022_____
_____(the "Settlement Date"), unless otherwise agreed in writing, at a time and place designated by Buyer.

> **NOTE:** See paragraph 10, **DELAY IN SETTLEMENT/CLOSING** for conditions under which Settlement may be delayed.

(m) "**Closing**": The completion of the legal process which results in the transfer of title to the Property from Seller to Buyer, which includes the following steps: (1) the Settlement (defined above); (2) the completion of a satisfactory title update to the Property following the Settlement; (3) the closing attorney's receipt of authorization to disburse all necessary funds; and (4) recordation in the appropriate county registry of the deed(s) and deed(s) of trust, if any, which shall take place as soon as reasonably possible for the closing attorney after Settlement. Upon Closing, the proceeds of sale shall be disbursed by the closing attorney in accordance with the settlement statement and the provisions of Chapter 45A of the North Carolina General Statutes. If the title update should reveal unexpected liens, encumbrances or other title defects, or if the closing attorney is not authorized to disburse all necessary funds, then the Closing shall be suspended and the Settlement deemed delayed under Paragraph 10 (Delay in Settlement/Closing).

> **WARNING:** The North Carolina State Bar has determined that the performance of most acts and services required for a closing constitutes the practice of law and must be performed only by an attorney licensed to practice law in North Carolina. State law prohibits unlicensed individuals or firms from rendering legal services or advice. Although non-attorney settlement agents may perform limited services in connection with a closing, they may not perform all the acts and services required to complete a closing. A closing involves significant legal issues that should be handled by an attorney. Accordingly it is the position of the North Carolina Bar Association and the North Carolina Association of REALTORS® that all buyers should hire an attorney licensed in North Carolina to perform a closing.

(n) "**Special Assessments**": A charge against the Property by a governmental authority in addition to ad valorem taxes and recurring governmental service fees levied with such taxes, or by an owners' association in addition to any regular assessment (dues), either of which may be a lien against the Property.

> **NOTE:** Buyer's and Seller's respective responsibilities for the payment of Special Assessments are addressed in paragraphs 4(a) and 6(k).

2.    **BUYER'S DUE DILIGENCE PROCESS**:

> **WARNING:** BUYER IS STRONGLY ENCOURAGED TO CONDUCT DUE DILIGENCE DURING THE DUE DILIGENCE PERIOD. If Buyer is not satisfied with the results or progress of Buyer's Due Diligence, Buyer should terminate this Contract, prior to the expiration of the Due Diligence Period, unless Buyer can obtain a written extension from Seller. SELLER IS NOT OBLIGATED TO GRANT AN EXTENSION. Although Buyer may continue to investigate the Property following the expiration of the Due Diligence Period, Buyer's failure to deliver a Termination Notice to Seller prior to the expiration of the Due Diligence Period will constitute a waiver by Buyer of any right to terminate this Contract based on any matter relating to Buyer's Due Diligence. Provided however, following the Due Diligence Period, Buyer may still exercise a right to terminate if Seller fails to materially comply with any of Seller's obligations under paragraph 6 of this Contract or for any other reason permitted under the terms of this Contract or North Carolina law.

(a) **Loan**: Buyer, at Buyer's expense, shall be entitled to pursue qualification for and approval of the Loan if any.

> **NOTE**: There is no loan or appraisal contingency in this Offer To Purchase and Contract. Therefore, Buyer is advised to consult with Buyer's lender prior to signing this offer to assure that the Due Diligence Period allows sufficient time for the loan process and for Buyer's lender to provide Buyer sufficient information to decide whether to proceed with or terminate the transaction.

Buyer initials _CC_____  _____  Seller initials _CK  CK_____

(b) **Property Investigation**: Buyer or Buyer's agents or representatives, at Buyer's expense, shall be entitled to conduct all desired tests, surveys, appraisals, investigations, examinations and inspections of the Property as Buyer deems appropriate, including but NOT limited to the following:

    (i)   **Soil And Environmental**: Reports to determine whether the soil is suitable for Buyer's intended use and whether there is any environmental contamination, law, rule or regulation that may prohibit, restrict or limit Buyer's intended use.

    (ii)   **Septic/Sewer System**: Any applicable investigation(s) to determine: (1) the condition of an existing sewage system, (2) the costs and expenses to install a sewage system approved by an existing Improvement Permit, (3) the availability and expense to connect to a public or community sewer system, and/or (4) whether an Improvement Permit or written evaluation may be obtained from the County Health Department for a suitable ground absorption sewage system.

    (iii)   **Water**: Any applicable investigation(s) to determine: (1) the condition of an existing private drinking water well, (2) the costs and expenses to install a private drinking water well approved by an existing Construction Permit, (3) the availability, costs and expenses to connect to a public or community water system, or a shared private well, and/or (4)  whether a Construction Permit may be obtained from the County Health Department for a private drinking water well.

    (iv)   **Review of Documents**: Review of the Declaration of Restrictive Covenants, Bylaws, Articles of Incorporation, Rules and Regulations, and other governing documents of any applicable owners' association and/or subdivision. If the Property is subject to regulation by an owners' association, it is recommended that Buyer review the completed Owners' Association And Addendum (Standard Form 2A12-T) provided by Seller prior to signing this offer. It is also recommended that the Buyer determine if the owners' association or its management company charges fees for providing information required by Buyer's lender or confirming restrictive covenant compliance.

    (v)   **Appraisals**: An appraisal of the Property

    (vi)   **Survey**: A survey to determine whether the property is suitable for Buyer's intended use and the location of easements, setbacks, property boundaries and other issues which may or may not constitute title defects.

    (vii)   **Zoning and Governmental Regulation**: Investigation of current or proposed zoning or other governmental regulation that may affect Buyer's intended use of the Property, adjacent land uses, planned or proposed road construction, and school attendance zones.

    (viii)   **Flood Hazard**: Investigation of potential flood hazards on the Property, and/or any requirement to purchase flood insurance in order to obtain the Loan.

    (ix)   **Utilities and Access:** Availability, quality, and obligations for maintenance of utilities including electric, gas, communication services, storm water management, and means of access to the Property and amenities.

    (x)   **Streets/Roads**: Investigation of the status of the street/road upon which the Property fronts as well as any other street/road used to access the Property, including: (1) whether any street(s)/road(s) are public or private, (2) whether any street(s)/road(s) designated as public are accepted for maintenance by the State of NC or any municipality, or (3) if private or not accepted for public maintenance, the consequences and responsibility for maintenance and the existence, terms and funding of any maintenance agreements.

> **NOTE:** NC General Statutes Section 136-102.6(f) (the "Statute") requires that under circumstances described in the Statute, a buyer must be provided a subdivision streets disclosure statement prior to entering into an agreement to buy subdivided property described in the Statute.  If Buyer or Seller are uncertain whether the sale of the Property described in this Contract is subject to the Statute, consult a NC real estate attorney.

    (xi)   **Special Assessments**: Investigation of the existence of Special Assessments that may be under consideration by a governmental authority or an owners' association.

(c) **Sale/Lease of Existing Property**: As noted in paragraph 3(b), this Contract is not conditioned upon the sale/lease or closing of other property owned by Buyer. Therefore, if Buyer must sell or lease other real property in order to qualify for a new loan or to otherwise complete the purchase of the Property, Buyer should seek to close on Buyer's other property prior to the end of the Due Diligence Period or be reasonably satisfied that closing on Buyer's other property will take place prior to the Settlement Date of this Contract.

(d) **Buyer's Obligation to Repair Damage**: Buyer shall, at Buyer's expense, promptly repair any damage to the Property resulting from any activities of Buyer and Buyer's agents and contractors, but Buyer shall not be responsible for any damage caused by accepted practices applicable to any N.C. licensed professional performing reasonable appraisals, tests, surveys, examinations and inspections of the Property. This repair obligation shall survive any termination of this Contract.

(e) **Indemnity**: Buyer will indemnify and hold Seller harmless from all loss, damage, claims, suits or costs, which shall arise out of any contract, agreement, or injury to any person or property as a result of any activities of Buyer and Buyer's agents and contractors relating to the Property except for any loss, damage, claim, suit or cost arising out of pre-existing conditions of the Property and/or out of Seller's negligence or willful acts or omissions. This indemnity shall survive this Contract and any termination hereof.

**STANDARD FORM 12-T**
**Revised 7/2022**
© 7/2022

Buyer initials _CC_____ _____ Seller initials ___CK__ __CK___

(f) **Buyer's Right to Terminate:** Provided that Buyer has delivered any agreed-upon Due Diligence Fee, Buyer shall have the right to terminate this Contract for any reason or no reason, by delivering to Seller written notice of termination (the "Termination Notice") during the Due Diligence Period (or any agreed-upon written extension of the Due Diligence Period), *TIME BEING OF THE ESSENCE*. If Buyer timely delivers the Termination Notice, this Contract shall be terminated and the Earnest Money Deposit shall be refunded to Buyer.

(g) **CLOSING SHALL CONSTITUTE ACCEPTANCE OF THE PROPERTY IN ITS THEN EXISTING CONDITION UNLESS PROVISION IS OTHERWISE MADE IN WRITING.**

3. **BUYER REPRESENTATIONS**:
   (a) **Funds to complete purchase:**
   ☑ (*Check if applicable*) Cash. Buyer intends to pay cash in order to purchase the Property and does not intend to obtain a loan or funds from sources other than Buyer's own assets. Verification of cash available for Settlement is ☐ is not ☑ attached.

   > **NOTE:** If Buyer does not intend to obtain a new loan(s) and/or funds from sources other than Buyer's own assets, Seller is advised, prior to signing this offer, to obtain documentation from Buyer which demonstrates that Buyer will be able to close on the Property without the necessity of obtaining a loan or funds from sources other than Buyer's own assets.

   **OR:**
   ☐ (*Check if applicable*) Loan(s)/Other Funds: Buyer intends to obtain a loan(s) and/or other funds to purchase the Property from the following sources (*check all applicable sources*):
   ☐ First Mortgage Loan:
   Buyer intends to obtain a first mortgage loan of the following type in order to purchase the Property: ☐ Conventional ☐ USDA
   ☐ Other type: _____
   _____
   in the principal amount of _____.
   ☐ Second Mortgage Loan:
   Buyer intends to obtain a second mortgage loan of the following type in order to purchase the Property: _____
   ☐ Other funds:
   Buyer intends to obtain funds from the following other source(s) in order to purchase the Property: _____
   _____
   _____

   > **NOTE:** Buyer's obligations under this Contract are not conditioned upon obtaining any loan(s) or other funds from sources other than Buyer's own assets. Some mortgage loan programs and other programs providing funds for the purchase of property selected by Buyer may impose repair obligations and/or additional conditions or costs upon Seller or Buyer, and more information may be needed.
   > Material changes with respect to funding the purchase of the Property that affect the terms of the contract are material facts that must be disclosed.

(b) **Other Property**: Buyer ☐ DOES ☑ DOES NOT have to sell or lease other real property in order to qualify for a new loan or to complete the purchase. (*Complete the following only if Buyer DOES have to sell or lease other real property:*)

Other Property Address: _____

☐ (*Check if applicable*) Buyer's other property IS under contract as of the date of this offer, and a copy of the contract has either been previously provided to Seller or accompanies this offer. (*Buyer may mark out any confidential information, such as the purchase price and the buyer's identity, prior to providing a copy of the contract to Seller.*) Failure to provide a copy of the contract shall not prevent this offer from becoming a binding contract; however, SELLER IS STRONGLY ENCOURAGED TO OBTAIN AND REVIEW THE CONTRACT ON BUYER'S PROPERTY PRIOR TO ACCEPTING THIS OFFER.

☐ (*Check if applicable*) Buyer's other property IS NOT under contract as of the date of this offer.  Buyer's property (*check only ONE of the following options*):
   ☐ is listed with and actively marketed by a licensed real estate broker.
   ☐ will be listed with and actively marketed by a licensed real estate broker.
   ☐ Buyer is attempting to sell/lease the Buyer's Property without the assistance of a licensed real estate broker.

> **NOTE:** This Contract is NOT conditioned upon the sale/lease or closing of Buyer's other property. If the parties agree to make this Contract conditioned on a sale/lease or closing of Buyer's other property, an appropriate contingency addendum should be drafted by a North Carolina real estate attorney and added to this Contract.

Buyer initials _CC_ _____   Seller initials _CK_ _CK_

**STANDARD FORM 12-T**
**Revised 7/2022**
**© 7/2022**

(c) **Performance of Buyer's Financial Obligations**: To the best of Buyer's knowledge, there are no other circumstances or conditions existing as of the date of this offer that would prohibit Buyer from performing Buyer's financial obligations in accordance with this Contract, except as may be specifically set forth herein.

4. **BUYER OBLIGATIONS**:

(a) **Responsibility for Special Assessments**: Buyer shall take title subject to all Special Assessments that may be approved following Settlement.

(b) **Responsibility for Certain Costs**: Buyer shall be responsible for all costs with respect to:
    (i) any loan obtained by Buyer;
    (ii) charges by an owners' association or a management company/vendor as agent of the association under paragraph 7(b) of this Contract;
    (iii) appraisal;
    (iv) title search;
    (v) title insurance;
    (vi) any fees charged by the closing attorney for the preparation of the Closing Disclosure, Seller Disclosure and any other settlement statement;
    (vii) recording the deed; and
    (viii) preparation and recording of all instruments required to secure the balance of the Purchase Price unpaid at Settlement.

(c) **Authorization to Disclose Information**: Buyer authorizes the Buyer's lender(s), the parties' real estate agent(s) and closing attorney: (1) to provide this Contract to any appraiser employed by Buyer or by Buyer's lender(s); and (2) to release and disclose any buyer's closing disclosure, settlement statement and/or disbursement summary, or any information therein, to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

5. **SELLER REPRESENTATIONS**:

(a) **Ownership**: Seller represents that Seller:
    ☑ has owned the Property for at least one year.
    ❑ has owned the Property for less than one year.
    ❑ does not yet own the Property.

(b) **Owners' Association(s) and Dues**: To best of Seller's knowledge, ownership of the Property ❑ subjects ☑ does not subject Buyer to regulation by one or more owners' association(s) and governing documents, which impose various mandatory covenants, conditions and restrictions upon the Property and Buyer's enjoyment thereof, including but not limited to obligations to pay regular assessments (dues) and Special Assessments. If there is an owners' association, then an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement (Standard Form 2A12-T) shall be completed by Seller, at Seller's expense, and must be attached as an addendum to this Contract.

(c) **Sewage System Permit**: (❑ Applicable ☑ Not Applicable) Seller warrants that the sewage system described in the Improvement Permit attached hereto has been installed, which representation survives Closing, but makes no further representations as to the system.

(d) **Private Drinking Water Well Permit**: (❑ Applicable ☑ Not Applicable) Seller warrants that a private drinking water well has been installed, which representation survives Closing, but makes no further representations as to the well. (If well installed after July 1, 2008, attach Improvement Permit hereto.

6. **SELLER OBLIGATIONS**:

(a) **Evidence of Title, Payoff Statement(s) and Non Foreign Status**:
    (i) Seller agrees to use best efforts to provide to the closing attorney as soon as reasonably possible after the Effective Date, copies of all title information in possession of or available to Seller, including but not limited to: title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust, leases, and easements relating to the Property.
    (ii) Seller shall provide to the closing attorney all information needed to obtain a written payoff statement from any lender(s) regarding any security interest in the Property as soon as reasonably possible after the Effective Date, and Seller designates the closing attorney as Seller's agent with express authority to request and obtain on Seller's behalf payoff statements and/or short-pay statements from any such lender(s).
    (iii) If Seller is not a foreign person as defined by the Foreign Investment in Real Property Tax Act, Seller shall also provide to the closing attorney a non-foreign status affidavit (pursuant to the Foreign Investment in Real Property Tax Act). In the event Seller shall not provide a non-foreign status affidavit, Seller acknowledges that there may be withholding as provided by the Internal Revenue Code.

Page 6 of 13

Buyer initials _CC____ _____ Seller initials __CK__ _CK___

DigiSign Verified - 24eb4692-ddf8-4cb5-a2ad-a133f938fee2

(b) **Authorization to Disclose Information**: Seller authorizes: (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Buyer and Buyer's and Seller's agents and attorneys;  (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Buyer and both Buyer's and Seller's agents and attorneys, and (3) the closing attorney to release and disclose any seller's closing disclosure, settlement statement and/or disbursement summary, or any information therein, to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

(c) **Access to Property**: Seller shall provide reasonable access to the Property through the earlier of Closing or possession by Buyer, including, but not limited to, allowing the Buyer and/or Buyer's agents or representatives an opportunity to (i) conduct Due Diligence, (ii) verify the satisfactory completion of negotiated repairs/improvements, and (iii) conduct a final walk-through inspection of the Property.  Seller's obligation includes providing existing utilities operating at Seller's cost including any connections and de-winterizing. To the extent applicable, Seller shall also be responsible for timely clearing that portion of the Property required by the County to perform tests, inspections and/or evaluations to determine the suitability of the Property for a sewage system and/or private drinking water well.

> **NOTE:** See WARNING in paragraph 2 above for limitation on Buyer's right to terminate this Contract as a result of Buyer's continued investigation of the Property following the expiration of the Due Diligence Period.

(d) **Removal of Seller's Property**: Seller shall remove from the Property, by the date possession is delivered, (i) all personal property which is not a part of the purchase and (ii) unless otherwise agreed, all garbage and debris.

(e) **Affidavit And Indemnification Agreement**: Seller shall furnish at Settlement an affidavit(s) and indemnification agreement(s) in form satisfactory to Buyer and Buyer's title insurer, if any, executed by Seller and any person or entity who has performed or furnished labor, services, materials or rental equipment to the Property within 120 days prior to the date of Settlement and who may be entitled to claim a lien against the Property as described in N.C.G.S. §44A-8 verifying that each such person or entity has been paid in full and agreeing to indemnify Buyer, Buyer's lender(s) and Buyer's title insurer against all loss from any cause or claim arising therefrom.

(f) **Designation of Lien Agent, Payment and Satisfaction of Liens**: If required by N.C.G.S. §44A-11.1, Seller shall have designated a Lien Agent, and Seller shall deliver to Buyer as soon as reasonably possible a copy of the appointment of Lien Agent. All deeds of trust, deferred ad valorem taxes, liens and other charges against the Property, not assumed by Buyer, must be paid and satisfied by Seller prior to or at Settlement such that cancellation may be promptly obtained following Closing. Seller shall remain obligated to obtain any such cancellations following Closing.

(g) **Good Title, Legal Access**: Seller shall execute and deliver a GENERAL WARRANTY DEED for the Property in recordable form no later than Settlement, which shall convey fee simple marketable and insurable title, without exception for mechanics' liens, and free of any other liens, encumbrances or defects, including those which would be revealed by a current and accurate survey of the Property, except: ad valorem taxes for the current year (prorated through the date of Settlement); utility easements and unviolated covenants, conditions or restrictions that do not materially affect the value of the Property; and such other liens, encumbrances or defects as may be assumed or specifically approved by Buyer in writing. The Property must have legal access to a public right of way.

> **NOTE:** Buyer's failure to conduct a survey or examine title of the Property prior to the expiration of the Due Diligence Period does not relieve the Seller of their obligation to deliver good title under this paragraph.

> **NOTE:** If any sale of the Property may be a "short sale," consideration should be given to attaching a Short Sale Addendum (Standard Form 2A14-T) as an addendum to this Contract.

(h) **Deed, Taxes, and Fees**: Seller shall pay for preparation of a deed and all other documents necessary to perform Seller's obligations under this Contract, and for state and county excise taxes, and any deferred, discounted or rollback taxes, and local conveyance fees required by law. The deed is to be made to:  **Ceila Caballero** _____.
_____.

(i) **Agreement to Pay Buyer Expenses**: Seller shall pay at Settlement $ **0.00** _____ toward any of Buyer's expenses associated with the purchase of the Property, at the discretion of Buyer and/or lender, if any, including any FHA/VA lender and inspection costs that Buyer is not permitted to pay.

Buyer initials *CC* ____  _____    Seller initials _____ *CK*  *CK*

**STANDARD FORM 12-T**
**Revised 7/2022**
© 7/2022

(j) **Owners' Association Fees/Charges**: Seller shall pay any charges of an owners' association or a management company/vendor as agent of the association under paragraph 7(a) of this Contract.

(k) **Payment of Special Assessments**: Seller shall pay, in full at Settlement, all Special Assessments that are approved prior to Settlement, whether payable in a lump sum or future installments, provided that the amount thereof can be reasonably determined or estimated. The payment of such estimated amount shall be the final payment between the Parties.

(l) **Late Listing Penalties**: All property tax late listing penalties, if any, shall be paid by Seller.

(m) **Owners' Association Disclosure and Condominium Resale Statement Addendum** (Standard Form 2A12-T): If applicable, Seller shall provide the completed Owners' Association Disclosure and Condominium Resale Statement Addendum to Buyer on or before the Effective Date.

(n) **Seller's Breach of Contract**: See paragraph 21 for Buyer's remedies in the event of breach of this Contract.

**7. CHARGES BY OWNERS' ASSOCIATION:** Responsibility for payment of charges by an owners' association or a management company/vendor as agent of the association shall be allocated between Buyer and Seller as follows:
(a) **Seller shall pay:**
(i) fees incurred by Seller in completing resale or other certificates related to a proposed sale of the Property;
(ii) fees required for confirming Seller's account payment information on owners' association dues or assessments for payment or proration, including any expedite fee permitted under N.C. Gen. Stat. § 47F-3-102 that is charged in connection with providing such information;
(iii) any fees charged for transferring or updating ownership records of the association; and
(iv) any fees other than those fees specifically required to be paid by Buyer under paragraph 7(b) below.

(b) **Buyer shall pay:**
(i) charges for providing information required by Buyer's lender;
(ii) working capital contributions, membership fees, or charges imposed for Buyer's use of the common elements and/or services provided to Buyer in connection with Buyer taking possession of the Property, such as "move-in fees"; and
(iii) determining restrictive covenant compliance.

**8. PRORATIONS AND ADJUSTMENTS:** Unless otherwise agreed, the following items shall be prorated, with Seller responsible for the prorated amounts of any taxes and dues through the date of Settlement, and Seller entitled to the amount of prorated rents through the date of Settlement, and either adjusted between the parties or paid at Settlement:
(a) **Taxes on Real Property:** Ad valorem taxes and recurring governmental service fees levied with such taxes on real property shall be prorated on a calendar year basis;

(b) **Rents**: Rents, if any, for the Property;

(c) **Dues**: Owners' association regular assessments (dues) and other like charges.

**9. CONDITION OF PROPERTY/RISK OF LOSS:**
(a) **Condition of Property at Closing:** If the Property is not in substantially the same or better condition at Closing as on the date of this offer, reasonable wear and tear excepted, Buyer may terminate this Contract by written notice delivered to Seller and the Due Diligence Fee and Earnest Money Deposit shall be refunded to Buyer. If the Property is not in such condition and Buyer does NOT elect to terminate this Contract, Buyer shall be entitled to receive, in addition to the Property, the proceeds of any insurance claim filed by Seller on account of any damage or destruction to the Property.

(b) **Risk of Loss:** The risk of loss or damage by fire or other casualty prior to Closing shall be upon Seller. Seller is advised not to cancel existing insurance on the Property until after confirming recordation of the deed.

**10. DELAY IN SETTLEMENT/CLOSING**: This paragraph shall apply if one party is ready, willing and able to complete Settlement on the Settlement Date ("Non-Delaying Party") but it is not possible for the other party to complete Settlement by the Settlement Date ("Delaying Party"). In such event, the Delaying Party shall be entitled to a delay in Settlement and shall give as much notice as possible to the Non-Delaying Party and closing attorney. If the Delaying Party fails to complete Settlement and Closing within seven (7) days of the Settlement Date (including any amended Settlement Date agreed to in writing by the parties), then the Delaying Party shall be in breach and the Non-Delaying Party may terminate this Contract and shall be entitled to enforce any remedies available to such party under this Contract for the breach.

Buyer initials _CC_____ _____   Seller initials __*CK*_ __*CK*__

**11**. **POSSESSION**: Unless otherwise provided herein, possession, including all means of access to the Property (keys, codes including security codes, gate openers, electronic devices, etc.) shall be delivered at Closing as defined in Paragraph 1(m). No alterations, excavations, tree or vegetation removal or other such activities may be done before possession is delivered

**12**. **ADDENDA:** CHECK ALL STANDARD ADDENDA THAT MAY BE A PART OF THIS CONTRACT, IF ANY, AND ATTACH HERETO. ITEMIZE ALL OTHER ADDENDA TO THIS CONTRACT, IF ANY, AND ATTACH HERETO.

❑ Additional Provisions Addendum (Form 2A11-T)   ❑ Owners' Association Disclosure Addendum
❑ Additional Signatures Addendum (Form 3-T)         (Form 2A12-T)
❑ Back-Up Contract Addendum (Form 2A1-T)       ❑ Seller Financing Addendum (Form 2A5-T)
❑ Loan Assumption Addendum (Form 2A6-T)        ❑ Short Sale Addendum (Form 2A14-T)

❑ Identify other attorney or party drafted addenda: _____
_____

> **NOTE:** UNDER NORTH CAROLINA LAW, REAL ESTATE BROKERS ARE NOT PERMITTED TO DRAFT ADDENDA
> TO THIS CONTRACT.

**13**. **ASSIGNMENTS**: This Contract may not be assigned without the written consent of all parties except in connection with a tax-deferred exchange, but if assigned by agreement, then this Contract shall be binding on the assignee and assignee's heirs and successors.

**14**. **TAX-DEFERRED EXCHANGE**: In the event Buyer or Seller desires to effect a tax-deferred exchange in connection with the conveyance of the Property, Buyer and Seller agree to cooperate in effecting such exchange; provided, however, that the exchanging party shall be responsible for all additional costs associated with such exchange, and provided further, that a non-exchanging party shall not assume any additional liability with respect to such tax-deferred exchange. Buyer and Seller shall execute such additional documents, including assignment of this Contract in connection therewith, at no cost to the non-exchanging party, as shall be required to give effect to this provision.

**15**. **PARTIES**: This Contract shall be binding upon and shall inure to the benefit of Buyer and Seller and their respective heirs, successors and assigns. As used herein, words in the singular include the plural and the masculine includes the feminine and neuter genders, as appropriate.

**16**. **SURVIVAL:** If any provision herein contained which by its nature and effect is required to be observed, kept or performed after the Closing, it shall survive the Closing and remain binding upon and for the benefit of the parties hereto until fully observed, kept or performed.

**17**. **ENTIRE AGREEMENT**: This Contract contains the entire agreement of the parties and there are no representations, inducements or other provisions other than those expressed herein. All changes, additions or deletions hereto must be in writing and signed by all parties. Nothing contained herein shall alter any agreement between a REALTOR® or broker and Seller or Buyer as contained in any listing agreement, buyer agency agreement, or any other agency agreement between them.

**18**. **CONDUCT OF TRANSACTION**: The parties agree that any action between them relating to the transaction contemplated by this Contract may be conducted by electronic means, including the signing of this Contract by one or more of them and any notice or communication given in connection with this Contract. Any written notice or communication may be transmitted to any mailing address, e-mail address or fax number set forth in the "Notice Information" section below. Any notice or communication to be given to a party herein, any fee, deposit of other payment to be delivered to a party herein, may be given to the party or to such party's agent. Delivery of any notice to a party via means of electronic transmission shall be deemed complete at such time as the sender performs the final act to send such transmission, in a form capable of being processed by the receiving party's system, to any electronic address provided for such party in the "Notice Information" section below. Seller and Buyer agree that the "Notice Information" and "Acknowledgment of Receipt of Monies" sections below shall not constitute a material part of this Contract, and that the addition or modification of any information therein shall not constitute a rejection of an offer or the creation of a counteroffer.

**19**. **EXECUTION**: This Contract may be signed in multiple originals or counterparts, all of which together constitute one and the same instrument.

**20**. **COMPUTATION OF DAYS/TIME OF DAY**:   Unless otherwise provided, for purposes of this Contract, the term "days" shall mean consecutive calendar days, including Saturdays, Sundays, and holidays, whether federal, state, local or religious. For the purposes of calculating days, the count of "days" shall begin on the day following the day upon which any act or notice as provided in this Contract was required to be performed or made.   Any reference to a date or time of day shall refer to the date and/or time of day in the State of North Carolina.

Buyer initials _CC_____ _____ Seller initials __CK___ __CK___

**21. REMEDIES:**

(a) **Breach by Buyer**: In the event of material breach of this Contract by Buyer, any Earnest Money Deposit shall be paid to Seller. The payment of any Earnest Money Deposit and any Due Diligence Fee to Seller (without regard to their respective amounts, including zero) together shall serve as liquidated damages ("Liquidated Damages") and as Seller's sole and exclusive remedy for such breach, but without limiting Seller's rights under Paragraphs 2(d) and 2(e) for damage to the Property. It is acknowledged by the parties that the amount of the Liquidated Damages is compensatory and not punitive, such amount being a reasonable estimation of the actual loss that Seller would incur as a result of a breach of this Contract by Buyer. The payment to Seller of the Liquidated Damages shall not constitute a penalty or forfeiture but actual compensation for Seller's anticipated loss, both parties acknowledging the difficulty determining Seller's actual damages for such breach.

(b) **Breach by Seller**: In the event of material breach of this Contract by Seller, Buyer may (i) elect to terminate this Contract as a result of such breach, and shall be entitled to return of both the Earnest Money Deposit and the Due Diligence Fee, together with the reasonable costs actually incurred by Buyer in connection with Buyer's Due Diligence ("Due Diligence Costs"), or (ii) elect not to terminate and instead treat this Contract as remaining in full force and effect and seek the remedy of specific performance.

(c) **Attorneys' Fees**: If legal proceedings are brought by Buyer or Seller against the other to collect the Earnest Money Deposit, Due Diligence Fee, or Due Diligence Costs, the parties agree that a party shall be entitled to recover reasonable attorneys' fees to the extent permitted under N.C. Gen. Stat. § 6-21.2. The parties acknowledge and agree that the terms of this Contract with respect to entitlement to the Earnest Money Deposit, Due Diligence Fee, or Due Diligence Costs each constitute an "evidence of indebtedness" pursuant to N.C. Gen. Stat. § 6-21.2.

> **NOTE:** A party seeking recovery of attorneys' fees under N.C. Gen. Stat. § 6-21.2 must first give written notice to the other party that they have five (5) days from the mailing of the notice to pay the outstanding amount(s) without the attorneys' fees.

[THIS SPACE INTENTIONALLY LEFT BLANK]

Buyer initials _CC_____ _____  Seller initials ___*CK*__ __*CK*___

DigiSign Verified - 24eb4693-ddf8-4cb5-a2ad-a133f938fec2

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. AND THE NORTH CAROLINA BAR ASSOCIATION MAKE NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DO NOT UNDERSTAND THIS FORM OR FEEL THAT IT DOES NOT PROVIDE FOR YOUR LEGAL NEEDS, YOU SHOULD CONSULT A NORTH CAROLINA REAL ESTATE ATTORNEY BEFORE YOU SIGN IT.

This offer shall become a binding contract on the Effective Date. Unless specifically provided otherwise, Buyer's failure to timely deliver any fee, deposit or other payment provided for herein shall not prevent this offer from becoming a binding contract, provided that any such failure shall give Seller certain rights to terminate the contract as described herein or as otherwise permitted by law.

Date: 12/02/2022 _____    Date: _____ 12/05/2022 _____

Buyer: *Ceila Caballero* _____    Seller : _____ *Cynthia Kennedy* _____

Date: _____    Date: _____ 12/05/2022 _____

Buyer: _____    Seller: _____ *Calvin Kennedy* _____

Entity Buyer:
_____
  (Name of LLC/Corporation/Partnership/Trust/etc.)

By: _____

Name: _____
              Print Name
Title: _____

Date: _____

Entity Seller:
_____
  (Name of LLC/Corporation/Partnership/Trust/etc.)

By: _____

Name: _____
              Print Name
Title: _____

Date: _____

**WIRE FRAUD WARNING**

TO BUYERS:  BEFORE SENDING ANY WIRE, YOU SHOULD CALL THE CLOSING ATTORNEY'S OFFICE TO VERIFY THE INSTRUCTIONS.  IF YOU RECEIVE WIRING INSTRUCTIONS FOR A DIFFERENT BANK, BRANCH  LOCATION, ACCOUNT NAME OR ACCOUNT NUMBER, THEY SHOULD BE PRESUMED FRAUDULENT.  DO NOT SEND ANY FUNDS AND CONTACT THE CLOSING ATTORNEY'S OFFICE IMMEDIATELY.

TO SELLERS: IF YOUR PROCEEDS WILL BE WIRED, IT IS RECOMMENDED THAT YOU PROVIDE WIRING INSTRUCTIONS AT CLOSING IN WRITING IN THE PRESENCE OF THE ATTORNEY.  IF YOU ARE UNABLE TO ATTEND CLOSING, YOU MAY BE REQUIRED TO SEND AN ORIGINAL NOTARIZED DIRECTIVE TO THE CLOSING ATTORNEY'S OFFICE CONTAINING THE WIRING INSTRUCTIONS.  THIS MAY BE SENT WITH THE DEED, LIEN WAIVER AND TAX FORMS IF THOSE DOCUMENTS ARE BEING PREPARED FOR YOU BY THE CLOSING ATTORNEY.  AT A MINIMUM, YOU SHOULD CALL THE CLOSING ATTORNEY'S OFFICE TO PROVIDE THE WIRE INSTRUCTIONS.  THE WIRE INSTRUCTIONS SHOULD BE VERIFIED OVER THE TELEPHONE VIA A CALL TO YOU INITIATED BY THE CLOSING ATTORNEY'S OFFICE TO ENSURE THAT THEY ARE NOT FROM A FRAUDULENT SOURCE.

WHETHER YOU ARE A BUYER OR A SELLER, YOU SHOULD CALL THE CLOSING ATTORNEY'S OFFICE AT A NUMBER THAT IS INDEPENDENTLY OBTAINED.  TO ENSURE THAT YOUR CONTACT IS LEGITIMATE, YOU SHOULD NOT RELY ON A PHONE NUMBER IN AN EMAIL FROM THE CLOSING ATTORNEY'S OFFICE, YOUR REAL ESTATE AGENT OR ANYONE ELSE.

STANDARD FORM 12-T
Revised 7/2022
© 7/2022

DigiSign Verified - 24eb4692-ddf8-4cb5-a2ad-a133f938fee2

**NOTICE INFORMATION**

> **NOTE**: INSERT AT LEAST ONE ADDRESS AND/OR ELECTRONIC DELIVERY ADDRESS EACH PARTY AND AGENT APPROVES FOR THE RECEIPT OF ANY NOTICE CONTEMPLATED BY THIS CONTRACT. INSERT "N/A" FOR ANY WHICH ARE NOT APPROVED.

**BUYER NOTICE ADDRESS**:

Mailing Address: _____

_____

Buyer Fax #: _____

Buyer E-mail:_____

**SELLER NOTICE ADDRESS**:

Mailing Address: _____

_____

Seller Fax #:_____

Seller E-mail:_____

## CONFIRMATION OF AGENCY/NOTICE ADDRESSES

Selling Firm Name: **Realty ONE Group Select**
Acting as ☑ Buyer's Agent ☐ Seller's (sub)Agent ☐ Dual Agent

Firm License#: **C28839**

Mailing Address: **241 Singleton Rd Suite E4**

**Mooresville NC 28117**

Individual Selling Agent: **Carmen Brooks**
☐ Acting as a Designated Dual Agent (check only if applicable)

Selling Agent License#: **302999**

Selling Agent Phone#: **(828) 228-3063**

Selling Agent Fax#: _____

Selling Agent E-mail: **carmensoldit@gmail.com**

Listing Firm Name: **Allen Tate University**
Acting as ☑ Seller's Agent ☐ Dual Agent

Firm License#: **C30590**

Mailing Address: **145 W W.T.Harris Blvd**

**Charlotte NC 28262**

Individual Listing Agent: **Arthur Cotton**
☐ Acting as a Designated Dual Agent (check only if applicable)

Listing Agent License#: **176858**

Listing Agent Phone#: **(704) 400-8100**

Listing Agent Fax#:_____

Listing Agent E-mail: **arthur.cotton@allentate.com**

Buyer initials *CC*_____ _____ Seller initials *CK*  *CK*

**STANDARD FORM 12-T**
**Revised 7/2022**
**© 7/2022**

**ACKNOWLEDGMENT OF RECEIPT OF MONIES**

Seller: **Calvin R Kennedy, Cynthia Kennedy** _____ ("Seller")

Buyer: **Ceila Caballero** _____ ("Buyer")

Property Address: **174 Jasmine Cir #36, Troutman, NC 28166** _____ ("Property")

❏ **LISTING AGENT ACKNOWLEDGMENT OF RECEIPT OF DUE DILIGENCE FEE**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Seller of a Due Diligence Fee in the amount of $ **500.00** _____, receipt of which Listing Agent hereby acknowledges.

Date_____   Firm: **Allen Tate University** _____

                                         By:_____
                                                           (Signature)
                                         **Arthur Cotton** _____
                                                           (Print name)

❏ **SELLER ACKNOWLEDGMENT OF RECEIPT OF DUE DILIGENCE FEE**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Seller of a Due Diligence Fee in the amount of $ **500.00** _____, receipt of which Seller hereby acknowledges.

Date:_____   Seller: _____
                                                            (Signature)

Date:_____   Seller: _____
                                                            (Signature)

❏ **ESCROW AGENT ACKNOWLEDGMENT OF RECEIPT OF INITIAL EARNEST MONEY DEPOSIT**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Escrow Agent of an Initial Earnest Money Deposit in the amount of $ **500.00** _____. Escrow Agent as identified in Paragraph 1(f) of the Offer to Purchase and Contract hereby acknowledges receipt of the Initial Earnest Money Deposit and agrees to hold and disburse the same in accordance with the terms of the Offer to Purchase and Contract.

Date:_____   Firm: _____

                                         By:_____
                                                           (Signature)
                                         **Alan Carpenter** _____
                                                           (Print name)

❏ **ESCROW AGENT ACKNOWLEDGMENT OF RECEIPT OF (ADDITIONAL) EARNEST MONEY DEPOSIT**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Escrow Agent of an (Additional) Earnest Money Deposit in the amount of $_____. Escrow Agent as identified in Paragraph 1(f) of the Offer to Purchase and Contract hereby acknowledges receipt of the (Additional) Earnest Money Deposit and agrees to hold and disburse the same in accordance with the terms of the Offer to Purchase and Contract.

Date:_____   Firm: _____

Time: _____ ❏ AM ❏ PM        By:_____
                                                           (Signature)
                                         **Alan Carpenter** _____
                                                           (Print name)

**STANDARD FORM 12-T**
**Revised 7/2022**
**© 7/2022**

DigiSign Verified - 24eb4693-ddf8-4cb5-a3ad-a133f938fee2

| A. **Settlement Statement** | U.S. Department of Housing and Urban Development | | |
|---|---|---|---|
| | | | OMB Approval No. 2502-0265 |

**B. Type of Loan**

| 1. ☐ FHA   2. ☐ RHS   3. ☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortage Insurance Case Number |
|---|---|---|---|
| 4. ☐ VA    5. ☐ Conv. Ins. | Caballero 174 | Cash Purchase | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | |
|---|---|
| **D. NAME OF BORROWER:** | Ceila Caballero |
| **ADDRESS OF BORROWER:** | |
| **E. NAME OF SELLER:** | Calvin Ray Kennedy and Cynthia M. Kennedy |
| **ADDRESS OF SELLER:** | 4324 Satterwythe Lane, Charlotte, NC  28215 |
| **F. NAME OF LENDER:** | CASH PURCHASE |
| **ADDRESS OF LENDER:** | |
| **G. PROPERTY LOCATION:** | 174 Jasmine Circle (Lot 36), Troutman, NC  28166 |
| ID# | |
| **H. SETTLEMENT AGENT:** | Alan G. Carpenter, P.A., Attorney at Law |
| **PH# (704) 872-6242** | 1318-C Davie Avenue, Statesville, NC 28677 |
| **PLACE OF SETTLEMENT:** | 1318-C Davie Avenue, Statesville, NC 28677 |
| **I. SETTLEMENT DATE:** | 12/29/2022     Disbursement Date:        Settlement Agent Tax ID#: 20-0589716 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | 18,000.00 | 401. Contract sales price | 18,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 692.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes   12/29/2022 to 12/31/2022 | 0.34 | 407. County taxes   12/29/2022 to 12/31/2022 | 0.34 |
| 108. Assessments          to | | 408. Assessments          to | |
| 109.          to | | 409.          to | |
| 110.          to | | 410.          to | |
| 111.          to | | 411.          to | |
| 112.          to | | 412.          to | |
| **120. Gross Amount Due from Borrower** | 18,692.34 | **420. Gross Amount Due To Seller** | 18,000.34 |
| **200. Amounts Paid by or in Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | 500.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 2,136.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. Principal amount of seller financing | | 506. Principal amount of seller financing | |
| 207. | | 507. | |
| 208. Due Diligence Fee Paid to Seller | 500.00 | 508. Due Diligence Fee Paid to Seller | 500.00 |
| 209. | | 509. | |
| 209a. | | 509a. | |
| 209b. | | 509b. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213.          to | | 513.          to | |
| 214.          to | | 514.          to | |
| 215.          to | | 515.          to | |
| 216.          to | | 516.          to | |
| 217.          to | | 517.          to | |
| 218.          to | | 518.          to | |
| 219.          to | | 519.          to | |
| **220. Total Amounts Paid by or in Behalf of Borrower** | 1,000.00 | **520. Total Reductions in Amount Due Seller** | 2,636.00 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | 18,692.34 | 601. Gross amount due to seller (line 420) | 18,000.34 |
| 302. Less amounts paid by/for borrower (line 220) | 1,000.00 | 602. Less reductions in amount due seller (line 520) | 2,636.00 |
| **303. Cash ☒ From ☐ To   Borrower** | 17,692.34 | **603. Cash ☒ To ☐ From Seller** | 15,364.34 |

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT

PAGE 2

| L. Settlement Charges | | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|
| 700. | **TOTAL SALES/BROKER'S COM. based on price** | 18,000.00 @ | 10.00 %= 1,800.00 | | |
| | Division of Commission (line 700) as follows: | | | | |
| 701. | 900.00 | to Realty ONE Group Select | | | |
| 702. | 900.00 | to Allen Tate University | | | |
| 703. | Commission paid at Settlement | | | | 1,800.00 |
| 704. | | to | | | |
| **800.** | **Items Payable in Connection With Loan** | | | | |
| 801. | Loan Origination Fee | % to | | | |
| 802. | Loan Discount | % to | | | |
| 803. | Appraisal Fee | to | | | |
| 804. | Credit Report | to | | | |
| 805. | Lender's Inspection Fee | to | | | |
| 806. | Mortgage Insurance Application Fee | to | | | |
| 807. | | to | | | |
| 808. | | to | | | |
| 809. | | to | | | |
| 810. | | to | | | |
| 811. | | to | | | |
| 812. | | to | | | |
| 813. | | to | | | |
| 814. | | to | | | |
| 815. | | to | | | |
| **900.** | **Items Required By Lender To Be Paid In Advance** | | | | |
| 901. | Interest from 12/29/2022 to 1/1/2023 @ /day | | | | |
| 902. | Mortgage Insurance Premium for months to | | | | |
| 903. | Homeowner's Insurance for years to | | | | |
| 904. | | years to | | | |
| 905. | | years to | | | |
| **1000.** | **Reserves Deposited With Lender** | | | | |
| 1001. | Hazard insurance | months@ | per month | | |
| 1002. | Mortgage insurance | months@ | per month | | |
| 1003. | City property taxes | months@ | per month | | |
| 1004. | County property taxes | months@ | per month | | |
| 1005. | Annual assessments | months@ | per month | | |
| 1006. | | months@ | per month | | |
| 1007. | | months@ | per month | | |
| 1008. | | months@ | per month | | |
| 1009. | | | | | |
| **1100.** | **Title Charges** | | | | |
| 1101. | Settlement or closing fee | to Alan G. Carpenter, P.A. | | 600.00 | |
| 1102. | Abstract or title search | to | | | |
| 1103. | Title examination | to | | | |
| 1104. | Title insurance binder | to | | | |
| 1105. | Document preparation | to Alan G. Carpenter, P.A. | | | 300.00 |
| 1106. | Notary fees | to | | | |
| 1107. | Attorney's fees | to | | | |
| | (includes above items numbers: | | | | |
| 1108. | Title insurance | to Tryon Title Agency, LLC | | 66.00 | |
| | (includes above items numbers: | | | | |
| 1109. | Lender's coverage: Risk Premium | INS AMT: | | | |
| 1110. | Owner's coverage: Risk Premium | INS AMT: | | | |
| 1110a | | | | | |
| 1111. | | to | | | |
| 1112. | | to | | | |
| 1113. | | to | | | |
| **1200.** | **Government Recording and Transfer Charges** | | | | |
| 1201. | Recording Fees: Deed $26.00; | | | 26.00 | |
| 1202. | City/county tax/stamps: | | | | |
| 1203. | State tax/stamps: Deed $36.00; | | | | 36.00 |
| 1204. | to | | | | |
| 1205. | to | | | | |
| **1300.** | **Additional Settlement Charges** | | | | |
| 1301. | Survey | to | | | |
| 1302. | Pest Inspection | to | | | |
| 1303. | Roof Inspection | to | | | |
| 1304. | | to | | | |
| 1305. | | to | | | |
| 1306. | | to | | | |
| 1307. | | to | | | |
| 1308. | | to | | | |
| 1309. | | to | | | |
| **1400.** | **Total Settlement Charges** | (enter on lines 103, Section J and 502, Section K) | | 692.00 | 2,136.00 |

**CERTIFICATION**        Date: 12/29/2022

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_(signature)_                    Borrower        _(signature)_                    Seller
Ceila Caballero                                Calvin Ray Kennedy

                                 Borrower        _(signature)_                    Seller
                                               Cynthia M. Kennedy

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

_(signature)_                    Alan G. Carpenter, P.A., Attorney at Law

                                               12/29/2022  DATE

Caballero 174